## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION — DETROIT

H&H WHOLESALE SERVICES, INC.,
HOWARD GOLDMAN and DAVID GULAS,

     Plaintiffs,

v.

KAMSTRA INTERNATIONAL, B.V. d/b/a
HOLLAND TRADING GROUP and/or
B&S HOLLAND TRADING GROUP, B.V,

     Defendants.

Case No.:
2:17-cv-13422-LJM-APP

District Judge
**Laurie J. Michelson**

Magistrate Judge
**Anthony P. Patti**

### KAMSTRA INTERNATIONAL, B.V.'S MOTION TO DISMISS

Defendant Kamstra International, B.V. ("Kamstra"), by and through undersigned counsel, pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(5), and 12(b)(6), requests that this Court dismiss Plaintiffs' Amended Complaint [Doc. 13] for lack of personal jurisdiction, insufficient service of process, and failure to state a claim upon which relief can be granted.  For the reasons explained in the accompanying *Brief in Support*, which is filed concurrently with this Motion, as well as the exhibits thereto, all of which are incorporated herein by reference, this Court, as a federal district court sitting in the State of Michigan, lacks personal jurisdiction over Kamstra.  In accordance with Local Rule 7.1, Kamstra has conferred with opposing counsel and understands that Plaintiffs oppose this Motion.

WHEREFORE, Kamstra respectfully requests that the Court dismiss this action with prejudice, awarding costs and expenses to Kamstra.

Respectfully submitted, this 24th day of January, 2018.

*/s/ Steven D. Ginsburg*
STEVEN D. GINSBURG
*Admitted via E. D. Mich. LR 83.20*
CLAUDIA D. POLHEMUS
Michigan Bar No. P81372

**LITCHFIELD CAVO LLP**
1300 Parkwood Circle SE, Suite 170
Atlanta, GA 30339-2143
Phone: (770) 628-7111
Fax: (770) 628-7101
ginsburg@litchfieldcavo.com
diaz@litchfieldcavo.com

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date set forth below, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

**Ethan R. Holtz**
Jaffe Raitt Heuer & Weiss
Eholtz@jaffelaw.com
*Counsel for Plaintiffs*

This 24th day of January, 2018.

/s/ Steven D. Ginsburg
STEVEN D. GINSBURG
*Admitted via E. D. Mich. LR 83.20*
CLAUDIA D. POLHEMUS
Michigan Bar No. P81372

**LITCHFIELD CAVO LLP**
1300 Parkwood Circle SE, Suite 170
Atlanta, GA 30339-2143
Phone: (770) 628-7111
Fax: (770) 628-7101
ginsburg@litchfieldcavo.com
diaz@litchfieldcavo.com

*Counsel for Defendants*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION — DETROIT

H&H WHOLESALE SERVICES, INC.,
HOWARD GOLDMAN and DAVID GULAS,

     Plaintiffs,

v.

KAMSTRA INTERNATIONAL, B.V. d/b/a
HOLLAND TRADING GROUP and/or
B&S HOLLAND TRADING GROUP, B.V,

     Defendants.

Case No.:
2:17-cv-13422-LJM-APP

District Judge
**Laurie J. Michelson**

Magistrate Judge
**Anthony P. Patti**

## KAMSTRA INTERNATIONAL, B.V.'S
## BRIEF IN SUPPORT OF MOTION TO DISMISS

Defendant Kamstra International, B.V.[1] ("Kamstra"), by and through undersigned counsel, files this Brief in Support of its Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(5), and 12(b)(6).

## CONCISE STATEMENT OF ISSUES PRESENTED

1.    Whether dismissal is required because Plaintiffs have failed to prove valid service of process due to the submission of untranslated foreign documents.

2.    Whether dismissal is required for lack of jurisdiction that is based solely upon an unenforceable and, in any event, superseded purported contract.

---

[1]    The correct name of this entity is Kamstra International, B.V. It does not do business as Holland Trading Group. Affidavit of Gerrit van Laar ("Laar Aff."), ¶ 2, attached hereto as Exhibit 1.

3.     Whether dismissal is required for lack of jurisdiction because there is no alternative basis either alleged or warranted to extend personal jurisdiction, and because the parties consented to exclusive jurisdiction in the Netherlands.

4.     Whether dismissal is required for failure to state a claim where, on the face of the Amended Complaint, the purported contract is unenforceable and superseded, and Plaintiffs Gulas and Goldman are not parties to the purported contracts and are not expressly identified as third-party beneficiaries.[2]

## STATEMENT OF MATERIAL FACTS

### A.     The parties discuss potential business opportunities.

Kamstra, a wholesaler of pharmaceutical products, is a Netherlands-based company.  B&S Holland Trading Group, B.V. ("B&S") is a holding company for various subsidiaries but is not Kamstra's parent company, which was HTG Health & Beauty, B.V.  Laar Aff., ¶ 2.  In 2013, Harmen Haaijer, an Area Sales Manager for Kamstra, was attending a trade show in Miami, Florida where he learned that H&H was interested in purchasing diabetes test strips.  Id., ¶ 3.  Haaijer made contact with H&H about becoming a potential customer of Kamstra and communicated with Plaintiff Gulas ("Gulas") about this opportunity. Id., ¶¶ 4–5.

### B.     The parties contemplate, but do not commit to, future business.

---

[2]     Pursuant to E. D. Mich. LR 7.1(d)(2), a separate statement of controlling authority and index of authorities are attached.

On or about February 14, 2014, the parties considered entering a transaction in which Kamstra would sell diabetes test strips to H&H, as reflected in an unsigned purchase order ("2014 Purchase Order").  Laar Aff., ¶ 15, App. 4. Because the parties had not done business in the past, they exchanged "new customer" forms setting forth basic information about the respective companies. On or about February 20, 2014, Haaijer filled out and printed, but did not sign, his name on the form titled "H&H Wholesale Service, Inc. Vendor Application and Agreement" (the "Vendor Application").  Id., ¶ 8, App. 1.  Haaijer was not authorized to sign binding contracts on Kamstra's behalf. Id., ¶ 9.  H&H did not expressly accept the Vendor Application.  Id., ¶ 11, App. 1.  On February 24, Gulas completed and returned Kamstra's standard new customer form ("2014 Customer Form") to Haaijer.  Id., ¶¶ 13, 14, Apps. 2, 3.

Notwithstanding the exchange of the Vendor Application, 2014 Customer Form, and the unsigned 2014 Purchase Order, the parties did not consummate the sale of the test strips.  On February 21, 2014, Haaijer prepared a Sales Order Confirmation reflecting terms for a proposed transaction.  Laar Aff., ¶ 16, App. 5. H&H did not accept the Sales Order Confirmation. Id.  The sale was never fulfilled and was cancelled. The parties did not consummate any transactions in 2014 or 2015.  Amended Complaint [Doc. 13], ¶ 13; Laar Aff., ¶¶ 7, 17; *see also* Affidavit of Jeroen Erents ("Erents Aff."), ¶¶ 6, 10, attached hereto as Exhibit 2.

3

### C.     H&H purchases from Kamstra in 2016 under new agreements.

In the spring of 2016, Jeroen Erents, the new Area Sales Manager for Kamstra, inquired whether H&H would be interested in a different diabetes test strip product—the Accu-Chek Aviva Plus product, which was not an Abbott product.  Erents Aff., ¶ 8.  H&H expressed an interest.  Id., ¶ 8, App. B.  Because the parties had not transacted any purchase or sale in the past, Mr. Erents sent a new customer form (the "2016 Customer Form") to H&H, which was completed by Gulas.  Id., ¶ 9.  The 2016 Customer Form incorporated Kamstra's General Terms and Conditions ("Kamstra GTCs").  Id., ¶ 9, App. C; Laar Aff., ¶ 30, App. 6.  Like the 2014 Customer Form, the 2016 Customer Form disclaimed any previous agreements between the parties and "expressly reject[ed] the applicability of [H&H's] terms and conditions."  Id.

The parties memorialized the sale of the Accu-Chek product in a Sales Order Confirmation ("Aviva SOC") that was signed by Gulas for H&H.  Erents Aff., ¶ 10, App. D.  The Accu-Chek goods were delivered through an independent third-party warehouse in Miami, Florida and, upon payment were released to H&H in Florida.  Id., ¶ 10.  This was the first sale consummated between the parties.  Id.

In the summer of 2016, Erents secured a supplier of Abbott (Freestyle Lite) diabetes test strips for the U.S. market.  Erents Aff., ¶ 12.  Erents offered to sell this product to H&H.  Id., ¶ 13.  The parties memorialized their agreement in

another Sales Order Confirmation ("Abbott SOC").  Id., ¶¶ 13, 14, App. E.  Again,
Gulas executed the Abbott SOC on behalf of H&H.  Id.  Subsequently, H&H
purchased four more consignments of Abbott test strips from Kamstra, all under
the same terms and conditions reflected in the Abbott SOC.  Erents Aff., ¶ 15.
Delivery to H&H on each of the five shipments occurred in Florida.[3]

Critically, the Abbott SOC (and the Aviva SOC, both dated July 11, 2016)
expressly rejected (in several places) the application of any prior agreement
between the parties as well as all terms or conditions of H&H.

> Our [Kamstra] General Terms and Conditions of sale, delivery and
> payment apply, which you have received from us, and  which are also
> deposited  at  the  commercial  register  and  published  at
> www.hollandtradinggroup.com.  We expressly reject the applicability
> of your terms and conditions.

See Abbott SOC, Ex. 2, App. E, p. 1.  Kamstra's GTCs, incorporated into the
Aviva SOC and Abbott SOC, also stated at Article 1.2 that "the applicability of the
Customer's general terms and conditions is hereby explicitly rejected."[4] Kamstra
GTCs, Ex. 1, App. 6, Art. 1.2 The General Terms and Conditions fully integrated
the Aviva SOC and Abbott SOC, providing that

---

[3]     Thus, Plaintiffs' unpled representation in footnote 4 of their Response in
Opposition to Defendants' Motion for Enlargement of Time [Doc. 10 at p. 13] that
Defendants "sold goods and delivered goods to Michigan" is patently false.
[4]     The bottom of each page of the two SOCs contains a similar disclaimer
rejecting the applicability of H&H's terms. Abbott SOC, Ex. 2, App. E, pp. 1, 2.

The contract represents the contents of the agreement completely and correctly. The order confirmation by the Company or the Company's invoice shall be considered to represent the contents of the agreement correctly, unless the Customer protests against its contents forthwith in writing and motivated.

Id., Art. 3.3. Kamstra's GTCs also established that the courts in Groningen, The Netherlands, "shall have exclusive jurisdiction" with "regard to any and all disputes in connection with the agreement . . ." and that the laws of the Netherlands would apply to such disputes. Id., Arts. 20.1, 20.2.

### D.     Kamstra lacks contacts with Michigan.

Plaintiffs filed this suit for indemnification arising out of separate litigation by Abbott against Plaintiffs pending in the United States District Court for the Eastern District of New York (*Abbott Laboratories et al. v. H&H Wholesale Services, Inc. et al.*, Case No. 1:17-cv-03095-CBA-LB).[5]  Amended Complaint, [Doc. 13], ¶ 21.  Kamstra is not a party to the Abbott Action, and Plaintiffs never sought to add Kamstra to the Abbott Action.  Instead, Plaintiffs seek relief against Kamstra here on the premise that the Vendor Application's paragraph 18 establishes jurisdiction. Id., ¶ 5 ("The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 and pursuant to the parties' contract").  However, as discussed below, the Vendor Application is unenforceable for numerous reasons.

---

[5]     That suit arose out of a related action in which H&H was enjoined from buying FreeStyle test strips long before its first transaction with Kamstra. *Abbott Laboratories et al. v. Adelphia Supply USA, et al.,* Case No. 1:15 cv-05826.

Beyond the forum selection clause in the Vendor Application, Plaintiffs do not allege any other basis for this Court to exercise jurisdiction over Kamstra. Kamstra, throughout its relationship with H&H, did not have material contact with the Michigan.  Laar Aff., ¶¶ 3–4, 18–29; Erents Aff., ¶¶ 10, 15, 16.  Kamstra's only contact with Michigan was incidental and immaterial occurring when Erents traveled to meet with Gulas in August 2016 after Gulas had already executed the Aviva SOC and Abbott SOC, and April 2017.  Erents Aff., ¶ 16.  However, Erents did not enter into any sales or other transactions while in Michigan.  Id.  Other than Erents' two trips to Michigan and Haaijer's and Erents' telephone and email correspondence with H&H, Kamstra is not aware of any other contact with H&H or with the Michigan.  Id., ¶ 15–17; Laar Aff., ¶¶18–29.

## ARGUMENT AND CITATION OF AUTHORITIES

### A.   Dismissal for failure to prove sufficient service of process.

Federal Rule of Civil Procedure 4(l) mandates that "proof of service must be made to the court." Plaintiffs have not done so.  The purported "Returns of Service" filed by Plaintiffs [Docs. 5 and 6] contain two documents written entirely in the Dutch language without translation, which prevents counsel for Kamstra (and, presumably, this Court) from determining whether service was proper under The Hague Convention or as prescribed by Netherlands law.  *See, e.g.*, Rosen v. Netsaits, 294 F.R.D. 524, 529 (C.D. Cal. 2013) (Dutch language return of service

inadequate to demonstrate lawful service on Netherlands-based company). Federal courts do not consider documents written in foreign languages, as the First Circuit clarified: "[i]t is clear to the point of perfect transparency that federal court proceedings must be conducted in English." United States v. Rivera-Rosario, 300 F.3d 1, 5 (1st Cir. 2002). "Parties are required to translate all foreign documents into English." United States v. Diaz, 519 F.3d 56, 64 (1st Cir. 2008) (citation omitted). Courts routinely exclude untranslated documents in foreign languages from consideration. If a party wishes for foreign language documents to be considered, "it [is] incumbent on him to provide a certified translation." Chevrolet, 357 F. Supp. 2d at 1329; Avirgan v. Hull, 691 F. Supp. 1357, 1371-72 (S.D. Fla. 1988) (stating it is not the Court's responsibility to translate documents). In failing to provide English translations, Plaintiffs cannot sustain their burden to prove that service was properly made. Accordingly, Plaintiffs' Amended Complaint should be dismissed for insufficient service of process. Rosen, 294 F.R.D. at 529.[6]

**B.      This Court lacks personal jurisdiction over Kamstra.**

> *i.      Standard of review.*

When deciding a motion to dismiss for lack of personal jurisdiction, "a district court has at its disposal three procedural alternatives: (1) it may decide the

---

[6]      If the Court permits Plaintiffs to amend and translate their proof of service, Kamstra requests the opportunity to object to service of process if the return of service is insufficient.

motion upon the affidavits alone; (2) it may permit discovery in aid of deciding the motion; or (3) it may conduct an evidentiary hearing to resolve any apparent factual questions. Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir.1991). Notwithstanding the method selected, the Plaintiffs bear the burden of establishing that personal jurisdiction exists. August v. Manley Toys, Ltd., 68 F. Supp. 3d 722, 725 (E.D. Mich. 2014). When the Court permits discovery or conducts an evidentiary hearing, Plaintiffs' burden must be established "through specific facts that personal jurisdiction exists over the non-resident defendant, and the plaintiff[s] must make this demonstration by a preponderance of the evidence." Conn v. Zakharov, 667 F.3d 705, 711 (6th Cir. 2012).

If the Court decides the question upon motions, Plaintiffs "need only make a prima facie showing of jurisdiction" and must "establish with reasonable particularity sufficient contacts between [Kamstra] and the forum state to support jurisdiction." MLS Nat. Med. Evaluation Servs., Inc. v. Templin, 812 F. Supp. 2d 788, 794 (E.D. Mich. 2011) (citations omitted). "[I]n the face of a properly supported motion for dismissal, the plaintiff[s] may not stand on [their] pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." SFS Check, LLC v. First Bank of Delaware, 990 F. Supp. 2d 762, 770 (E.D. Mich. 2013).

   *ii.*  *The Vendor Application does not convey personal jurisdiction over Kamstra because it is invalid and unenforceable.*

9

Plaintiffs' sole basis for alleging jurisdiction over Kamstra is the Vendor Application, which contains a forum selection clause.  Amended Complaint, ¶ 5; Vendor Application, Ex. 2, App. 1, ¶ 18.  However, it is axiomatic that Plaintiffs cannot enforce the forum selection clause of the Vendor Application where the agreement is, itself, unenforceable.[7]   The Vendor Application is not enforceable because it does not satisfy the statute of frauds.  Even if, *arguendo,* the Vendor Application was initially valid, it was expressly rejected, terminated, and superseded by the Aviva SOC and Abbott SOC.

     a.    The Vendor Application is unenforceable because it lacks a quantity term as required by the statute of frauds.

The Vendor Application violates a fundamental tenet of the UCC—the statute of frauds—in failing to specify a quantity term, rendering it unenforceable as a matter of law.  *See* Mich. Comp. Laws Ann. § 440.2201.  Under the statute of frauds, the writing evidencing a contract "has three definite and invariable requirements . . . . First, it must evidence a contract for the sale of goods; second, it must be 'signed' . . . and third, it must specify a quantity."  Id., Cmt. 1.  Michigan courts have long-held that a quantity term must appear in the writing in order to

---

[7]    *See, e.g.*, Traton News, LLC v. Traton Corp., 914 F. Supp. 2d 901, 910 (S.D. Ohio 2012) (where contract failed for lack of consideration, plaintiff could not rely on forum selection provision); Offerdahl v. Silverstein, 224 Mich. App. 417, 420, 569 N.W.2d 834, 836 (1997) ("A contractual forum selection clause . . . may not be enforced against one not bound by the contract.").

satisfy the statute of frauds.  Easy Way, Inc. v. Transp. Int'l Pool, Inc., 67 Fed.
Appx. 863, 867 (6th Cir. 2003), *citing* Lorenz Supply Co. v. American Standard,
Inc., 419 Mich. 610, 614, 358 N.W.2d 845 (1984).  Significantly, "while other
terms of the contract may be proven by parol evidence, the quantity may not."
Acemco, Inc. v. Olympic Steel Lafayette, Inc., 2005 WL 2810716, at *3 (Mich. Ct.
App. Oct. 27, 2005).[8]  In the absence of a written quantity term, a contract is
unenforceable as a matter of law.  Id. at *7 (Where there is no discernable quantity
in the four corners of the agreement trial court erred when it denied Olympic's
motion for summary disposition).

The Vendor Application undisputedly lacks a quantity term, and merely
reflects an understanding that Kamstra could, but was under no obligation to, sell
products to H&H without reference to quantities.  Similar contracts have been
found to be unenforceable under Michigan law.  For example, the Michigan Court
of Appeals found a three-year supply agreement was unenforceable where the
"documents that created the alleged contract . . . did not contain a quantity of
steel."  Dedoes Indus., Inc. v. Target Steel, Inc., 2005 WL 1224700, at *2 (Mich.
Ct. App. May 24, 2005).  In *Aleris Aluminum*, the defendant attempted to satisfy

---

[8]     *See also* Aleris Aluminum Canada L.P. v. Valeo, Inc., 718 F. Supp. 2d 825,
832 (E.D. Mich. 2010) ("[W]here the writing relied upon to form the contract of
sale is totally silent as to quantity, parol evidence cannot be used to supply the
missing term.").

the statute of frauds by referencing several documents, including a purchase order,
purchase terms and conditions, and weekly forecasts; however, because none of the
documents, singularly or collectively, "obligated [defendant] to purchase any
quantity of products," the agreement between the parties was unenforceable as a
matter of law.  Aleris, 718 F. Supp. 2d at 832.  Similarly, in *Acemco*, a "supply
agreement," which was similar in scope to the Vendor Application in the instant
case, provided only the potential for future transactions between the parties but
nothing more concrete.

> Reasonable minds could not construe the [contract] as containing a
> quantity term because the language specifies no quantity whatsoever.
> The language instead grants complete discretion to the buyer to
> deliver purchase orders containing any amount or no amount at its
> discretion without any other limiting feature.  The grant of complete
> discretion results in a countless number of possible quantities from
> zero to infinity.  'Any' quantity is in fact no quantity at all.

Acemco, 2005 WL 2810716, at *4; *see also* MacSteel, Inc. v. Eramet North
America, 2006 WL 3334019 (E.D. Mich. 2006) (agreement too indefinite with
respect to quantity to obligate the plaintiff to purchase any goods and, therefore,
failed to satisfy the statute of frauds).

    The Vendor Application shares the same fatal characteristics as the
foregoing unenforceable supply contracts—it did not obligate Kamstra or H&H to
make any transaction, and it failed to set forth a quantity as required by the statute
of frauds.  Plaintiffs admit in their Amended Complaint that Kamstra did not

supply H&H with any test strips for 2 years after the Vendor Application was sent by H&H.  Amended Complaint [Doc. 13], ¶ 13; *see also* Laar Aff., ¶ 17.  It was not until H&H executed the Aviva SOC and Abbott SOC, which rejected the terms of the Vendor Application, that a sale was consummated.

Thus, this matter is removed from the ambit of other cases where courts have found that a question of fact exists as to the enforceability of a contract.  For example, in Johnson Controls, Inc. v. TRW Vehicle Safety Sys., Inc., 491 F. Supp. 2d 707, 717 (E.D. Mich. 2007) the court found that the buyer's "purchase orders, in combination with [its] Global Terms, contain[ed] a quantity term" because the purchase order stated "as rel." in the quantity column, and the Global Terms defined "as rel" by reference to the buyer's periodic material releases, which specified the "exact quantities of parts needed." .[9]  Unlike *Johnson Controls* and *Great Northern Packaging*, Kamstra and H&H did not consummate any transaction under the Vendor Application that could conceivably supply a quantity term to satisfy the statute of frauds' requirement or that bound Kamstra to sell H&H a certain quantity of product.  *See, e.g.*, Acemco, 2005 WL 2810716, at *4 ("'Any' quantity is in fact no quantity at all.").

---

[9]     *See also* Great N. Packaging, Inc. v. Gen. Tire & Rubber Co., 154 Mich. App. 777, 786, 399 N.W.2d 408, 412 (1986) (question of fact whether enforceable contract existed where parties' agreement expressly bound seller to transaction for a "blanket order" of machines at a set price).

The Vendor Application is H&H's only basis to assert that (1) Kamstra is subject to jurisdiction in Michigan and (2) Kamstra has contractual obligations to H&H.  Because the Vendor Application is unenforceable as a matter of law, H&H cannot enforce its forum selection clause, warranty terms, or indemnity provision. *See, e.g.*, Acemco, Inc., 2005 WL 2810716, at *7 (refusing to enforce indemnity provisions of agreement unenforceable for lack of quantity term).  Therefore, this Court should dismiss Plaintiffs' Amended Complaint.

b.     The Vendor Application was terminated.

Even if the Court held that the Vendor Application was enforceable, the Vendor Application was terminated by the Aviva SOC and Abbott SOC.  The Michigan UCC permits parties to enter into contracts of unspecified duration with a caveat.  "Where the contract provides for successive performances but is indefinite in duration it is valid for a reasonable time but unless otherwise agreed may be terminated at any time by either party."  Mich. Comp. Laws Ann. § 440.2309(2).  In other words, "[t]he rule is rather that where the parties have not agreed upon the term, duration, or manner of termination of such an agreement it is generally deemed to be terminable at the will of either party because they have not agreed otherwise."  Lichnovsky v. Ziebart Int'l Corp., 414 Mich. 228, 240–41, 324 N.W.2d 732, 738–39 (1982); *accord* Aaron E. Levine & Co., Inc. v. Calkraft Paper

14

Co., 429 F. Supp. 1039, 1050 (E.D. Mich. 1976) (agreement that "contained no express provision regarding its duration" was terminable at will by either party).[10]

The Vendor Application does not specify its duration or method of termination and, therefore, was terminable at will. The Plaintiffs' pleaded absence of a single transaction under the Vendor Application for over two years suffices to show it was abandoned (if it ever was enforceable). In any event, the Aviva SOC and the Abbott SOC, along with the incorporated Kamstra GTCs each expressly terminated the Vendor Application by, among other things, referencing several provisions that outright rejected the application of the Vendor Application. Gulas accepted these express terms for H&H in both documents on July 11, 2016. Abbott SOC, Ex. 2, App. E, p. 2; Aviva SOC, Ex. 2, App. D, p. 1. Thus, Plaintiffs cannot complain that they lacked notice of Kamstra's rejection of the Vendor Application.[11] Any doubt that Plaintiffs had notice is removed when considering that Plaintiffs proceeded to make several more purchases from Kamstra (see Amended Complaint, ¶19) under terms identical to the Aviva SOC and Abbott

---

[10] Moreover, a contract lacking such terms may be "terminated by abandonment." See Mich. Comp. Laws Ann. § 440.2309, Cmt. 5; see also Shurlow v. Bonthuis, 456 Mich. 730, 735, 576 N.W.2d 159, 162 (1998) ("Although lacking the force of law, the official comments appended to each section of the UCC are useful aids to interpretation and construction.").

[11] See, e.g., UAW-GM Ctr. for Human Res. v. Workplace Benefits, LLC, 2007 WL 2822778, at *5 (E.D. Mich. Sept. 26, 2007), on reconsideration, 06-10450, 2008 WL 283728 (E.D. Mich. Feb. 1, 2008) (email correspondence merely implying termination provided sufficient notice).

SOC.  Erents Aff., ¶ 15.  The Vendor Application was patently terminated, and Plaintiffs cannot now seek to enforce its terms.

c.    The Vendor Application was superseded.

Plaintiffs' reliance on the Vendor Application is also erroneous because, assuming *arguendo* that it was not terminated and was otherwise enforceable, it was superseded by the Aviva SOC, the Abbott SOC and Kamstra's General Terms and Conditions, each of which H&H expressly agreed to and signed.  "Under Michigan law, entering a superseding, inconsistent agreement covering the same subject matter rescinds an earlier contract and operates as a waiver of any claim for breach of the earlier contract not expressly reserved."  Kelsey-Hayes Co. v. Galtaco Redlaw Castings Corp., 749 F. Supp. 794, 796 (E.D. Mich. 1990).

There can be no question that the Aviva SOC, the Abbott SOC, and the Kamstra GTCs superseded the Vendor Application.  The agreements are wholly and materially inconsistent with respect to the single document relied upon by Plaintiffs to substantiate this action.[12]  Specifically, although the Vendor Application selected Michigan as the jurisdiction for disputes, the Aviva SOC and

---

[12]     The Vendor Application and Abbott SOC differ in numerous other material respects as well.  For example, the Abbott SOC specified delivery to, and payment upon arrival at, an independent warehouse in Fort Lauderdale, whereas the Vendor Application required delivery to H&H's warehouse and payment only upon delivery to its warehouse. *Cf.* Vendor Application, Ex. 2, App. A, ¶ 3 *with* Abbott SOC, Ex. 1, App. E, p. 1.

the Abbott SOC each exclusively established jurisdiction in Groningen and mandated the application of the law of the Netherlands.  Kamstra GTCs, Ex. 1, App. 6, Art. 20.2. Likewise, the Vendor Application provided for indemnification of H&H by Kamstra, but the Aviva SOC and the Abbott SOC flip this obligation in the opposite direction. Id., Art. 15.  Thus, the Vendor Application, if it was ever enforceable, was replaced by the Aviva SOC and the Abbott SOC.  *See, e.g.*, CMI Int'l, Inc. v. Intermet Int'l Corp., 251 Mich. App. 125, 130, 649 N.W.2d 808, 812 (2002) ("Because the agreements covered the same subject matter at issue and included inconsistent terms, the July agreement superseded the March agreement."); Glazer v. Lehman Bros., Inc., 394 F.3d 444, 460 (6th Cir. 2005).

The fact that the both the Aviva SOC and the Abbott SOC are integrated definitively establishes that the Vendor Application was replaced.  *See* Kamstra GTCs, Ex. 1, App. 6, Art. 3.3. It is a fundamental tenet of contract law that

> a valid integration clause nullifie[s] all prior and contemporaneous agreements, understandings, representations, and warranties, [and] plaintiff may not use parol evidence to contradict the explicit terms of the integration clause."

Hamade v. Sunoco Inc. (R & M), 271 Mich. App. 145, 171, 721 N.W.2d 233, 250 (2006) (plaintiff barred from relying on prior agreements due to integration clause); Ditzik v. Schaffer Lumber Co., 139 Mich. App. 81, 88, 360 N.W.2d 876, 880 (1984) ("Where a binding agreement is integrated, it supersedes inconsistent

terms of prior agreements and previous negotiations to the extent that it is

inconsistent with them.").

> We note that it is not always necessary for a later contract to contain
> an integration clause in order for this later contract to supersede an
> earlier contract.  Rather, if the later contract covers the same subject
> matter as the earlier contract and contains terms that are inconsistent
> with the terms of the earlier contract, the later contract may supersede
> the earlier contract, unless it appears that this is not what the parties
> intended.  **However, where the later contract contains an
> integration clause, it cannot be said that the later contract does
> not supersede the earlier contract on the basis that that is not
> what the parties intended.**  Obviously, in such a situation, the
> integration clause provides clear evidence to the contrary, i.e., that the
> parties *did* intend the later contract to supersede the earlier contract.
> Therefore, the existence of an integration clause in the later contract
> necessarily indicates that the parties intended the later contract to
> supersede the earlier contract, and thus provides dispositive evidence
> with regard to which contract is controlling.

Archambo v. Lawyers Title Ins. Corp., 466 Mich. 402, 414 n. 16, 646 N.W.2d 170,

177 (2002) (emphasis supplied).  Accordingly, the integration clauses in the Aviva

SOC and the Abbott SOC illustrate the parties' intent to enter into a subsequent,

inconsistent agreement including, without limitation, the forum selection and

choice-of-law clauses.[13] *Cf.* Performance Contracting Inc. v. DynaSteel Corp., 750

F.3d 608, 616 (6th Cir. 2014) (where subsequent agreement did not contradict

initial agreement's choice-of-law provision or address the law to be applied to any

---

[13]     Because the Abbott SOC is integrated, the UCC expressly precludes
Plaintiffs from relying upon antecedent agreements to vary its terms.  *See* TIBCO
Software, Inc. v. Gordon Food Serv., Inc., 2003 WL 21683850, at *5 (W.D. Mich.
July 3, 2003), *relying on* Mich. Comp. Laws Ann. § 440.2202.

disputes, the original agreement's choice-of-law provision remained binding). Because the Vendor Application was superseded, Plaintiffs have failed to prove that jurisdiction is appropriate in this Court.

> iii.    There is no alternative basis to exert jurisdiction over Kamstra.

Plaintiffs do not allege any alternative basis for this Court to maintain personal jurisdiction over Kamstra. To make a prima facie showing of jurisdiction,[14] Plaintiffs' must establish with reasonable particularity sufficient contacts to support jurisdiction. MLS Nat. Med. Evaluation Servs., Inc., 812 F. Supp. 2d at 794 (E.D. Mich. 2011). Specifically, Plaintiffs must demonstrate this

> court's exercise of personal jurisdiction in a diversity of citizenship
> case [is] both (1) authorized by the law of the state in which it sits,
> and (2) in accordance with the Due Process Clause of the Fourteenth
> Amendment.

Id.; see also Smith v. Amada Mach. Tools Am. Inc., 2017 WL 4339328, at *4 (E.D. Mich. June 12, 2017) (Michelson, J.).

Here, Plaintiffs have not pled any—much less, sufficient—facts to subject Kamstra to this Court's jurisdiction.15  Plaintiffs neither allege that Kamstra is

---

[14]    Plaintiffs are entitled to satisfy this lesser burden only if the Court resolves jurisdiction upon the motions without holding an evidentiary hearing.

[15]    Presumably, Plaintiffs' omission is an implicit acknowledgement that such facts are non-existent. As set forth in Mr. Laar's and Mr. Erents' affidavits, Kamstra lacks a physical presence in Michigan, made no sales in Michigan, and shipped no products to Michigan. In short, Kamstra lacks sufficient contacts with the state to trigger jurisdiction under Michigan's long-arm statute or Due Process.

subject to Michigan's long-arm statutes (*see* Mich. Comp. Laws §§ 600.711, 600.715), nor that this Court may exercise either general or specific jurisdiction over Kamstra in accordance with the Due Process Clause of the Fourteenth Amendment. *See, e.g.*, Smith, 2017 WL 4339328, at *4. ("Only the well-pled facts of the complaint, affidavits, or other writings, as distinguished from conclusory allegations, can establish jurisdiction."). Further, there are no factual allegations showing "with reasonable particularity sufficient contacts" between Kamstra and Michigan for this Court to exercise personal jurisdiction. Id. Plaintiffs' omission of such factual allegations is fatal. *See, e.g.*, Smith, 2017 WL 4339328, at *4; SFS Check, LLC, 990 F. Supp. 2d at 771.

> iv.     *The forum selection clause of the Abbott SOC must be enforced and this matter dismissed.*

When Plaintiffs accepted the Abbott SOC, they agreed that the courts in Groningen, the Netherlands, would have "exclusive jurisdiction . . . with regard to any and all disputes in connection with the [Abbott SOC] . . . ." Kamstra GTCs, Ex. 1, App. 6, Art. 20.1. "A forum selection clause contained in an agreement in connection with an arm's length commercial transaction between two business entities is valid and enforceable." Preferred Capital, Inc. v. Associates in Urology, 453 F.3d 718, 721 (6th Cir. 2006) (dismissal of case for lack of jurisdiction

---

Given the clear forum selection clause in the Abbott SOC, an attempt at amendment would be futile and frivolous.

appropriate in face of forum selection clause).  Moreover, "Michigan courts have

recognized the enforceability of forum selection clauses as the basis for dismissal

of an action." Aircraft Interior Servs., LLC v. Jet Innovations, 2009 WL 3464562,

at *1 (E.D. Mich. Oct. 22, 2009), *citing* Turcheck v. Amerifund Fin., Inc., 272

Mich. App. 341, 344, 725 N.W.2d 684, 687 (2006).[16]

> While not identical, dismissal based on a forum-selection clause is
> similar to a grant of summary disposition for lack of personal
> jurisdiction. Although a valid forum-selection clause does not
> *divest* the Michigan courts of personal jurisdiction over the parties, it
> evinces the parties' intent to forgo personal jurisdiction in Michigan
> and consent to *exclusive* jurisdiction in another forum.

Turcheck, 272 Mich. App. at 344, 725 N.W.2d at 687.  Because Plaintiffs bound

themselves to a forum-selection clause establishing exclusive jurisdiction in the

Netherlands, the Court should dismiss Plaintiffs' claims for lack of jurisdiction.

### C. Plaintiffs have failed to state claims upon which relief may be granted and, therefore, the Court should dismiss the Amended Complaint.

#### i. *Standard of review for failure to state a claim.*

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal for failure to

state a claim upon which relief may be granted. "To survive a motion to dismiss

under Rule 12(b)(6), a complaint must contain either direct or inferential

---

[16] *See* Wilson v. 5 Choices, LLC, 2017 WL 2882337, at *3 (E.D. Mich. July 6, 2017) ("Plaintiffs . . . all agreed to exclusive jurisdiction in the courts within the state of Utah, and that plainly disposes of the matter before this court.").

21

allegations respecting all the material elements to sustain a recovery under some viable legal theory." Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n, 176 F.3d 315, 319 (6th Cir. 1999).[17] "[A] complaint must provide sufficient facts to state a claim to relief that is plausible on its face." Wilson, 2017 WL 2882337, at *3. The "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949–50 (2009).

> ii.    *Plaintiffs have failed to state claims for which relief can be granted because the Vendor Application is unenforceable.*

Plaintiffs' claims arise from Paragraphs 9, 11, and 13 of the Vendor Application. As discussed above, on its face the Vendor Application is not enforceable and all products sold to H&H by Kamstra were subject exclusively to the terms and conditions set forth in, and incorporated into, the Aviva SOC and the Abbott SOC. Plaintiffs have not stated claims upon which relief can be granted.

> iii.    *Gulas and Goldman lack standing to sue because they were not third-party beneficiaries under the Vendor Application.*

Gulas and Goldman have failed to state a claim for which relief can be granted because, on the face of the Amended Complaint and its Exhibit, they were

---

[17]    It is appropriate for the Court to consider documents incorporated into or referred within the Amended Complaint and Kamstra's Motion without converting this Motion into one for summary judgment under Fed. R. Civ. P. 56. In re Fair Fin. Co., 834 F.3d 651, 656 (6th Cir. 2016); *see also* Weiner v. Klais & Co., 108 F.3d 86, 89 (6th Cir. 1997).

not "intended third-party beneficiaries of the indemnity obligations contained in the Vendor Application." Amended Complaint [Doc. 13], ¶ 49. Their conclusory allegation, without more, is insufficient to state a claim. Although the Vendor Application is unenforceable on its face, and Plaintiffs cannot rely on its indemnity provision, *See* Acemco, 2005 WL 2810716, at *7, the fact that Gulas and Goldman purport to be third-party beneficiaries does not grant them a special right to enforce an invalidated contract. *See, e.g.*, Koenig v. City of S. Haven, 460 Mich. 667, 684, 597 N.W.2d 99, 108 (1999), *citing* Mich. Comp. Laws Ann. § 600.1405 ("A third party may not enforce a promise if the underlying contract is infirm.").

Assuming *arguendo* that the Vendor Application was enforceable, Gulas' and Goldman's claims still fail. To have standing to enforce a contract as a third-party beneficiary, the third-party must show that the contract reflects the express or implied intention of the parties to the contract to benefit the third-party. Ahmad v. Wells Fargo Bank, NA, 861 F. Supp. 2d 818, 828 (E.D. Mich. 2012); Grant v. Trinity Health-Michigan, 390 F. Supp. 2d 643, 651 (E.D. Mich. 2005). Michigan has defined who has standing as a third-party beneficiary. *See* Mich. Comp. Laws Ann. § 600.1405.

> [T]he plain language of this statute reflects that not every person incidentally benefitted by a contractual promise has a right to sue for breach of that promise, but rather only if the promisor has undertaken to give or to do or refrain from doing something *directly* to or for said person. By using the modifier 'directly,' the Legislature intended to assure that contracting parties are clearly aware that the scope of

23

> their contractual undertakings encompasses a third party, **directly referred to in the contract**, before the third party is able to enforce the contract.

Boylan v. Fifty Eight LLC, 289 Mich. App. 709, 728–29, 808 N.W.2d 277, 289 (2010) (emphasis supplied).  In other words, "under Michigan law, an express promise to act for the benefit of a third-party must be made in order to create third-party beneficiary status."  Riley v. Ameritech Corp., Inc., 147 F. Supp. 2d 762, 774 (E.D. Mich. 2001).

> only intended, not incidental, third-party beneficiaries may sue for a breach of a contractual promise in their favor . . . and a court should look no further than the form and meaning of the contract itself to determine whether a party is an intended third-party beneficiary within the meaning of 1405.

Schmalfeldt v. N. Pointe Ins. Co., 469 Mich. 422, 428, 670 N.W.2d 651, 654 (2003).  Gulas' and Goldman's bare allegation that they were "intended third-party beneficiaries" of the Vendor Application is insufficient.  Nothing within the Vendor Application—which is, itself, integrated—or, more particularly, its indemnity provision, identifies Gulas or Goldman as "intended third-party beneficiaries."  By its own terms, the only intended beneficiary of the indemnity provision is H&H itself, and Gulas and Goldman are not even referred to in the Vendor Agreement.[18]  Vendor Application, Ex. 2, App. A, ¶ 13.  In the absence of

---

[18]    *Cf.* Boylan, 289 Mich. at 730, 808 N.W.2d at 290 ("The contract nowhere refers to [plaintiff].  At best, [plaintiff] qualifies as an incidental

"contractual language demonstrating an undertaking directly for the benefit of [Gulas and Goldman] . . . Plaintiffs cannot establish that [they were] a third-party beneficiary" of the Vendor Application under Section 1405.  <u>Koenig</u>, 460 Mich. at 683–84, 597 N.W.2d at 107.  Therefore, this Court should dismiss the claims by Gulas and Goldman because they lack standing as third-party beneficiaries.

Respectfully submitted, this 24th day of January, 2018.

*/s/ Steven D. Ginsburg*
STEVEN D. GINSBURG
*Admitted via E. D. Mich. LR 83.20*
CLAUDIA D. POLHEMUS
Michigan Bar No. P81372

**LITCHFIELD CAVO LLP**
1300 Parkwood Circle SE, Suite 170
Atlanta, GA 30339-2143
Phone: (770) 628-7111
Fax: (770) 628-7101
ginsburg@litchfieldcavo.com
diaz@litchfieldcavo.com

*Counsel for Defendants*

---

beneficiary of the portion of the contract requiring [defendant] to 'provide the necessary protection to prevent damage, injury or loss . . . .'") *with* <u>Vanerian v. Charles L. Pugh Co.</u>, 279 Mich. App. 431, 436 (2008) (plaintiff was a third-party beneficiary because she was "expressly referred to in the contract.").

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date set forth below, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

**Ethan R. Holtz**
Jaffe Raitt Heuer & Weiss
Eholtz@jaffelaw.com
*Counsel for Plaintiffs*

This 24th day of January, 2018.

*/s/ Steven D. Ginsburg*
STEVEN D. GINSBURG
*Admitted via E. D. Mich. LR 83.20*
CLAUDIA D. POLHEMUS
Michigan Bar No. P81372

**LITCHFIELD CAVO LLP**
1300 Parkwood Circle SE, Suite 170
Atlanta, GA 30339-2143
Phone: (770) 628-7111
Fax: (770) 628-7101
ginsburg@litchfieldcavo.com
diaz@litchfieldcavo.com

*Counsel for Defendants*