## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION — DETROIT

H&H WHOLESALE SERVICES, INC.,
HOWARD GOLDMAN and DAVID GULAS,

      Plaintiffs,

v.

KAMSTRA INTERNATIONAL, B.V. d/b/a
HOLLAND TRADING GROUP,

      Defendant.

Case No.:
2:17-cv-13422-LJM-APP

District Judge
**Laurie J. Michelson**

Magistrate Judge
**Anthony P. Patti**

### KAMSTRA INTERNATIONAL, B.V.'S SECOND MOTION TO DISMISS

Defendant Kamstra International, B.V. ("Kamstra"), by and through undersigned counsel, pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(5), and 12(b)(6), requests that the Court dismiss Plaintiffs' Second Amended Complaint (R. 22) for lack of personal jurisdiction, insufficient service of process, and failure to state a claim upon which relief can be granted.  In support of its Motion, Kamstra relies upon the facts and law set forth in the accompanying Brief in Support, as well as its previous Motion to Dismiss (R. 15), the affidavits in support (R. 15-1, 15-2),

1

and Response in Opposition to Plaintiffs' Motion for Leave to File Second Amended Complaint (R. 23) and its supporting affidavit (R. 23-3).[1]

In accordance with Local Rule 7.1, Kamstra's counsel has conferred with opposing counsel and understands that Plaintiffs oppose this Motion.

WHEREFORE, Kamstra respectfully requests that the Court dismiss this action with prejudice, awarding costs and expenses to Kamstra.

Respectfully submitted, this 27th day of April, 2018.

/s/ Steven D. Ginsburg
STEVEN D. GINSBURG
*Admitted via E. D. Mich. LR 83.20*
CLAUDIA D. POLHEMUS
Michigan Bar No. P81372

**LITCHFIELD CAVO LLP**
1300 Parkwood Circle SE, Suite 170
Atlanta, GA 30339-2143
Phone: (770) 628-7111
Fax: (770) 628-7101
ginsburg@litchfieldcavo.com
diaz@litchfieldcavo.com

*Counsel for Defendant*

---

[1] It is appropriate for the Court to consider documents incorporated into or referred within the Second Amended Complaint and this Motion without converting this Motion into one for summary judgment under Fed. R. Civ. P. 56. In re Fair Fin. Co., 834 F.3d 651, 656 (6th Cir. 2016); *see also* Weiner v. Klais & Co., 108 F.3d 86, 89 (6th Cir. 1997).

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION — DETROIT

H&H WHOLESALE SERVICES, INC.,
HOWARD GOLDMAN and DAVID GULAS,

     Plaintiffs,

v.

KAMSTRA INTERNATIONAL, B.V. d/b/a
HOLLAND TRADING GROUP,

     Defendant.

Case No.:
2:17-cv-13422-LJM-APP

District Judge
**Laurie J. Michelson**

Magistrate Judge
**Anthony P. Patti**

## KAMSTRA INTERNATIONAL, B.V.'S
## BRIEF IN SUPPORT OF SECOND MOTION TO DISMISS

Defendant Kamstra International, B.V. ("Kamstra"), by and through

undersigned counsel, files this Brief in Support of its Second Motion to Dismiss

pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(5), and 12(b)(6).

# TABLE OF CONTENTS

TABLE OF CONTENTS...........................................................................ii

CONCISE STATEMENT OF ISSUES PRESENTED ...........................................iv

CONTROLLING AUTHORITY ...............................................................vi

STATEMENT OF MATERIAL FACTS ..............................................................1

    A.    **The parties contemplate, but do not commit to, future business**...........................................................................1

    B.    **H&H purchases from Kamstra in 2016 under new agreements that rejected the Vendor Application** .........................2

    C.    **Kamstra lacks significant contacts with Michigan** .......................4

ARGUMENT AND CITATION OF AUTHORITIES..........................................5

    A.    **This Court lacks personal jurisdiction over Kamstra** ..................5

        i.    *The Vendor Application does not convey personal jurisdiction over Kamstra because it is unenforceable* ............6

            a.    The Vendor Application is unenforceable because it lacks a quantity term as required by the statute of frauds....................................................6

            b.    The Vendor Application was terminated.......................9

            c.    The Vendor Application was superseded ....................10

        ii.    *The forum selection clause of the Sales Agreements must be enforced and this matter dismissed* ..........................12

        iii.    *Kamstra lacks sufficient minimum contacts with Michigan to support personal jurisdiction* ..............................13

**B.**    **Plaintiffs have failed to state claims upon which relief may be granted and, therefore, the Court should dismiss the Second Amended Complaint** ........................................................... 16

    *i.*    *Plaintiffs have failed to state a claim for breach of contract because the Vendor Application is unenforceable* ................. 17

    *ii.*    *Plaintiffs have failed to state a claim for breach of warranty because the alleged warranties are unenforceable and were disclaimed* ....................................... 17

    *iii.*    *Plaintiffs have failed to state a claim for fraudulent inducement* ............................................................................... 18

        a.    H&H's fraud claim fails because it is barred by the economic loss rule ............................................. 18

        b.    Gulas and Goldman have failed to plead a fraud claim with sufficient particularity ...................... 20

    *iv.*    *Gulas and Goldman have failed to state a claim because they lack standing and were not third-party beneficiaries under the Vendor Application* .......................... 21

    *v.*    *H&H has failed to state a claim for declaratory judgment* .... 24

## <u>CONCISE STATEMENT OF ISSUES PRESENTED</u>

1.      Whether dismissal is required for lack of personal jurisdiction where the exercise of personal jurisdiction is premised upon the forum selection clause of an unenforceable contract?  **Yes, the Plaintiffs' attempt to rely upon a forum selection provision in an unenforceable contract is futile and warrants dismissal for lack of personal jurisdiction.**

2.      Whether dismissal is required for lack of personal jurisdiction because the written agreements applicable to the parties' transactions contain an exclusive forum selection clause in another jurisdiction?  **Yes, the underlying contracts require the parties to litigate this dispute in a jurisdiction other than Michigan.**

3.      Whether dismissal is required for lack of personal jurisdiction because the exercise of personal jurisdiction would violate Due Process?  **Yes, Kamstra lacks sufficient minimum contacts with the State of Michigan to justify the exercise of personal jurisdiction in this Court.**

4.      Whether Plaintiffs have failed to state a claim for which relief can be granted for breach of contract and breach of warranty?  **Yes, Plaintiffs' claims are premised on an unenforceable contract and require dismissal.  Further, the applicable sales contracts disclaimed any implied warranty under which Plaintiffs seek relief.  Finally, Goldman and Gulas were not third-party**

beneficiaries of any agreement between the parties and, therefore, have failed to state a claim.

5.     Whether Plaintiffs have failed to state a claim for which relief can be granted for fraud in the inducement?  **Yes, Plaintiffs' fraud claim is barred by the economic loss rule because it is entirely derivative of their contract and warranty claims and concerns the quality or character of the goods sold.  In addition, Gulas and Goldman have not pled each element of fraud with sufficient particularity as required by Fed. R. Civ. P. 9(b) and they lack standing to bring a fraud claim in their individual capacities.**

6.     Whether Plaintiffs have failed to state a claim for declaratory judgment?  **Yes, as the Court lacks jurisdiction, the request for declaratory judgment is wholly redundant with Plaintiffs' other claims for relief, and declaratory judgment is not an effective remedy in this dispute.**

7.     Whether dismissal is required for insufficient service of process?  **Yes, as Plaintiffs have failed to prove that service of process was accomplished in accordance with applicable law.**

## <u>CONTROLLING AUTHORITY</u>

Fed. R. Civ. P. 9(b)

Fed. R. Civ. P. 12(b)(2), 12(b)(5), and 12(b)(6)

MCL § 440.2201

MCL § 440.2309(2)

MCL § 440.2312

<u>Theunissen v. Matthews</u>, 935 F.2d 1454, 1458 (6th Cir.1991)

<u>MLS Nat. Med. Evaluation Servs., Inc. v. Templin</u>, 812 F. Supp. 2d 788, 794 (E.D. Mich. 2011)

<u>SFS Check, LLC v. First Bank of Delaware</u>, 990 F. Supp. 2d 762, 770 (E.D. Mich. 2013)

<u>Offerdahl v. Silverstein</u>, 224 Mich. App. 417, 420 (1997)

<u>Acemco, Inc. v. Olympic Steel Lafayette, Inc.</u>, 2005 WL 2810716, at *3 (Mich. Ct. App. Oct. 27, 2005)

<u>Aleris Aluminum Canada L.P. v. Valeo, Inc.</u>, 718 F. Supp. 2d 825, 832 (E.D. Mich. 2010)

<u>Dedoes Indus., Inc. v. Target Steel, Inc.</u>, 2005 WL 1224700, at *2 (Mich. Ct. App. May 24, 2005)

<u>MacSteel, Inc. v. Eramet North America</u>, 2006 WL 3334019 (E.D. Mich. 2006)

<u>CMI Int'l, Inc. v. Intermet Int'l Corp.</u>, 251 Mich. App. 125, 130 (2002)

<u>Glazer v. Lehman Bros., Inc.</u>, 394 F.3d 444, 460 (6th Cir. 2005)

<u>Hamade v. Sunoco Inc. (R & M)</u>, 271 Mich. App. 145, 171 (2006)

<u>Archambo v. Lawyers Title Ins. Corp.</u>, 466 Mich. 402, 414 (2002)

Preferred Capital, Inc. v. Associates in Urology, 453 F.3d 718, 721 (6th Cir. 2006)

Aircraft Interior Servs., LLC v. Jet Innovations, 2009 WL 3464562, at *1 (E.D. Mich. Oct. 22, 2009)

Walker Motorsport, Inc. v. Henry Motorsport, Inc., 110 F.3d 66 (6th Cir. 1997)

Miller v. AXA Winterthur Ins. Co., 694 F.3d 675, 680 (6th Cir. 2012)

Kerry Steel, Inc. v. Paragon Indus., Inc., 106 F.3d 147, 151 (6th Cir. 1997)

Calphalon Corp. v. Rowlette, 228 F.3d 718, 723 (6th Cir. 2000)

Rice v. Karsch, 154 Fed. Appx. 454, 463 (6th Cir. 2005)

Park-Ohio Indus., Inc. v. Tucker Induction Sys., Ltd., 1988 WL 1045372, at *2 (E.D. Mich. Mar. 7, 1988)

Allmand Associates, Inc. v. Hercules Inc., 960 F. Supp. 1216, 1222–23 (E.D. Mich. 1997)

Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc., 209 Mich. App. 365, 373 (1995)

Murphy v. The Proctor & Gamble Co., 695 F. Supp. 2d 600, 602 (E.D. Mich. 2010)

Ram Int'l, Inc. v. ADT Sec. Servs., Inc., 555 Fed. Appx. 493, 500 (6th Cir. 2014)

Wiggins v. Argent Mortgage Co., LLC, 945 F. Supp. 2d 817, 824 (E.D. Mich. 2013)

Tann v. Chase Home Fin., L.L.C., 2011 WL 3799841, at *9 (E.D. Mich. Aug. 26, 2011)

Boylan v. Fifty Eight LLC, 289 Mich. App. 709, 728–29 (2010)

Schmalfeldt v. N. Pointe Ins. Co., 469 Mich. 422, 428 (2003)

Florists' Transworld Delivery, Inc. v. Fleurop-Interflora, 261 F. Supp. 2d 837, 846 (E.D. Mich. 2003)

## STATEMENT OF MATERIAL FACTS

### A.       The parties contemplate, but do not commit to, future business.

Kamstra is a Netherlands-based wholesaler of pharmaceutical products.  In 2013, Harmen Haaijer of Kamstra and Plaintiff Gulas ("Gulas") of H&H met in Florida to discuss the potential sale of diabetes test strips.  R. 15-1, ¶¶ 3–5.  On February 14, 2014, the parties considered entering a transaction in which Kamstra would sell test strips to H&H, as reflected in an unsigned purchase order.  Id., ¶ 15, App. 4.  Because the parties had not done business in the past, they exchanged "new customer" forms.  On February 20, 2014, Haaijer returned the "H&H Wholesale Service, Inc. Vendor Application and Agreement" (the "Vendor Application") to Gulas.  Id., ¶ 8, App. 1.  Haaijer was not authorized to sign contracts on Kamstra's behalf (id., ¶ 9) but, in any event, H&H itself did not expressly accept the Vendor Application.  Id., ¶ 11, App. 1.  On February 24, Gulas completed and returned Kamstra's standard new customer form to Haaijer, which expressly rejected the application of H&H's terms and conditions and incorporated Kamstra's General Terms and Conditions (the "Kamstra GTCs").  Id., ¶¶ 13, 14, Apps. 2, 3; *see also* id., App. 6, Art. 1.2. Haaijer prepared a Sales Order Confirmation reflecting terms for the proposed transaction, but H&H did not accept it.  Id., ¶ 16, App. 5.  The proposed sale never occurred, and the parties did not consummate any sale until 2016.  Id., ¶¶ 7, 17; R. 15-2, ¶¶ 6, 10.

**B.**     **H&H purchases from Kamstra in 2016 under new agreements that rejected the Vendor Application.**

The parties consummated their first transaction on July 11, 2016,[2] when H&H purchased "Aviva Plus 50's" diabetes test strips from Kamstra pursuant to a Sale Order Confirmation (the "Aviva SOC") that Gulas executed on behalf of H&H.  R. 15-2, ¶ 10, App. D.[3]  The goods were delivered to Florida and released to H&H.  Id.  The parties entered into a separate agreement for the sale of Abbott (Freestyle Lite) diabetes tests strips to H&H, which was memorialized in another Sales Order Confirmation ("Abbott SOC") executed by Gulas.  R. 15-2, ¶¶ 13, 14, App. E.   The Abbott strips sold to H&H are acknowledged and identified in Plaintiffs' Second Amended Complaint Paragraphs 30, 33, 36, and 40.  R. 22, ¶¶ 30, 33, 36, 40.  Plaintiffs even reference Kamstra's invoices (via the "HTG Invoice #"), which Kamstra has previously filed (the "Kamstra Invoices").  *See* R. 23-3. Delivery to H&H on each order occurred in Florida.  Id.

The documents memorializing the parties' transactions, including each sale of Abbott strips, expressly rejected (in several places) the application of any prior

---

[2]     Because the parties had not transacted any purchase or sale in the past, Kamstra sent a new customer form ("2016 Customer Form") to H&H, which incorporated Kamstra's GTC's, disclaimed any previous agreements between the parties and "expressly reject[ed] the applicability of [H&H's] terms and conditions."  R. 15-2, ¶ 9, App. C.  Gulas returned the form to Kamstra.  Id.

[3]     Plaintiffs' Second Amended Complaint (R. 22) does not controvert that this sale occurred pursuant to the terms of the Aviva SOC.  In fact, Plaintiffs' Second Amended Complaint omits this—the parties' first—transaction.

agreement between the parties as well as any terms and conditions of H&H.  The

Aviva SOC and Abbott SOC state:

> Our [Kamstra] General Terms and Conditions of sale, delivery and
> payment apply, which you have received from us, and  which are also
> deposited at the commercial register and published at
> www.hollandtradinggroup.com.  We expressly reject the applicability
> of your terms and conditions.

R. 15-2, Apps. D, E.  Further, the Aviva SOC, the Abbott SOC, and the Kamstra

Invoices reject the Vendor Application and disclaim warranties as to infringement:

> To all agreements whereby we [Kamstra] act as seller our general
> terms and conditions of sale, delivery and payment apply . . ., which
> you have received from us, and which are also published at
> www.hollandtradinggroup.com. We expressly reject the applicability
> of your terms and conditions.
>
> . . .
>
> It is the buyer's sole responsibility where he sells the merchandise; the
> seller has no influence on this.   The seller wishes to emphasize that
> the custom status of the goods does not imply the trademark rights are
> exhausted.  The buyer should verify himself whether he is entitled to
> sell the goods in the market where he wishes to sell.  The buyer is
> fully responsible and solely liable for any infringement and will
> indemnify the seller for any liability in this respect.

Id.; *see also* R. 23-3.  Each of these documents incorporates Kamstra's GTCs,

which state that "the applicability of the Customer's general terms and conditions

is hereby explicitly rejected."  R. 15-1, App. 6, Art. 1.2. The Kamstra GTCs fully

integrated the Aviva SOC, Abbott SOC, and Kamstra Invoices:

> The contract represents the contents of the agreement completely and
> correctly. The order confirmation by the Company or the Company's

invoice shall be considered to represent the contents of the agreement correctly, unless the Customer protests against its contents forthwith in writing and motivated.

Id., Art. 3.3.[4] The Kamstra GTCs also contain additional disclaimers with respect to packaging and infringement. R. 15-1, App. 6, Arts. 14.1, 14.2, 15.3.  Finally, the Kamstra's GTCs established exclusive jurisdiction of all disputes in Groningen, the Netherlands, subject to the laws of the Netherlands.  Id., Arts. 20.1, 20.2.

### C.      Kamstra lacks significant contacts with Michigan.

Plaintiffs' request that the Court exercise jurisdiction over Kamstra pursuant to Paragraph 18 of the Vendor Application is futile because, as discussed below, the Vendor Application is unenforceable.   With respect to minimum contacts, Plaintiffs do not allege facts sufficient for this Court to exercise jurisdiction over Kamstra.  Kamstra did not have material contact with Michigan. R. 15-1, ¶¶ 3–4, 18–29; R. 15-2, ¶¶ 10, 15, 16.   Kamstra's only contact with Michigan was incidental and immaterial, occurring when Erents traveled to meet with Gulas in August 2016—after H&H had already executed the Aviva SOC and Abbott SOC— and April 2017. R. 15-2, ¶ 16.  However, Erents did not enter into any sales while in Michigan.  Id.  Erents' trips did not concern the transactions at issue.  Other than Erents' two trips to Michigan and Haaijer's and Erents' telephone and email

---

[4]      The 2016 Customer Form, Aviva SOC, Abbott SOC, the Kamstra Invoices, and the Kamstra GTCs are collectively referred to as the "Sales Agreements".

correspondence with H&H, Kamstra is not aware of any other contact with H&H or Michigan, and Plaintiffs have not alleged any.  Id., ¶ 15–17; R. 15-1, ¶¶ 18–29.

## ARGUMENT AND CITATION OF AUTHORITIES

### A.    This Court lacks personal jurisdiction over Kamstra.

When deciding a motion to dismiss for lack of personal jurisdiction, "a district court has at its disposal three procedural alternatives: (1) it may decide the motion upon the affidavits alone; (2) it may permit discovery in aid of deciding the motion; or (3) it may conduct an evidentiary hearing to resolve any apparent factual questions.  Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir.1991). Plaintiffs bear the burden of establishing that personal jurisdiction exists.  August v. Manley Toys, Ltd., 68 F. Supp. 3d 722, 725 (E.D. Mich. 2014). When the Court permits discovery or conducts an evidentiary hearing, Plaintiffs' burden must be established "through specific facts that personal jurisdiction exists over the non-resident defendant, and the plaintiff[s] must make this demonstration by a preponderance of the evidence." Conn v. Zakharov, 667 F.3d 705, 711 (6th Cir. 2012).  If the Court decides the question upon motions, Plaintiffs must make "a prima facie showing of jurisdiction" and must "establish with reasonable particularity sufficient contacts between [Kamstra] and the forum state to support jurisdiction." MLS Nat. Med. Evaluation Servs., Inc. v. Templin, 812 F. Supp. 2d 788, 794 (E.D. Mich. 2011) (citations omitted).  "[I]n the face of a

properly supported motion for dismissal, the plaintiff[s] may not stand on [their] pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." SFS Check, LLC v. First Bank of Delaware, 990 F. Supp. 2d 762, 770 (E.D. Mich. 2013).[5]

> i. *The Vendor Application does not convey personal jurisdiction over Kamstra because it unenforceable.*

It is axiomatic that Plaintiffs cannot enforce the forum selection clause of the Vendor Application where the agreement itself is unenforceable. Traton News, LLC v. Traton Corp., 914 F. Supp. 2d 901, 910 (S.D. Ohio 2012); Offerdahl v. Silverstein, 224 Mich. App. 417, 420 (1997). The Vendor Application is not enforceable because it does not satisfy the statute of frauds. Even if it did, it was rejected, terminated, and superseded by the Sales Agreements.

> a. The Vendor Application is unenforceable because it lacks a quantity term as required by the statute of frauds.

The Vendor Application fails to specify a quantity term, rendering it unenforceable as a matter of law. MCL § 440.2201. Under the statute of frauds, the writing evidencing a contract "has three definite and invariable requirements . . . . First, it must evidence a contract for the sale of goods; second, it must be

---

[5] In addition, pursuant to Fed. R. Civ. P. 12(b)(5), Plaintiffs have failed to submit a return of service (*see* R. 17) that adequately proves to the Court that proper service was made in the Netherlands and, therefore, the exercise of jurisdiction is not appropriate.

'signed' . . . and third, it must specify a quantity." Id., Cmt. 1.  Michigan courts have long-held that a quantity term must appear in the writing in order to satisfy the statute of frauds.  Easy Way, Inc. v. Transp. Int'l Pool, Inc., 67 Fed. Appx. 863, 867 (6th Cir. 2003), *citing* Lorenz Supply Co. v. American Standard, Inc., 419 Mich. 610, 614 (1984).  Significantly, "while other terms of the contract may be proven by parol evidence, the quantity may not."  Acemco, Inc. v. Olympic Steel Lafayette, Inc., 2005 WL 2810716, at *3 (Mich. Ct. App. Oct. 27, 2005).[6]  In the absence of a written quantity term, a contract is unenforceable as a matter of law. Id. at *7 (finding trial court erred in denying summary judgment where there was no discernable quantity in the four corners of the agreement).

The Vendor Application undisputedly lacks a quantity term, as it merely reflects an understanding that Kamstra could, but was under no obligation to, sell products to H&H.  Similar contracts have been found to be unenforceable under Michigan law.  For example, a three-year supply agreement was unenforceable where the "documents that created the alleged contract . . . did not contain a quantity of steel."  Dedoes Indus., Inc. v. Target Steel, Inc., 2005 WL 1224700, at *2 (Mich. Ct. App. May 24, 2005).  In *Aleris Aluminum*, the defendant attempted

---

[6]     *See also* Aleris Aluminum Canada L.P. v. Valeo, Inc., 718 F. Supp. 2d 825, 832 (E.D. Mich. 2010) ("[W]here the writing relied upon to form the contract of sale is totally silent as to quantity, parol evidence cannot be used to supply the missing term.").

to satisfy the statute of frauds by referencing several documents, including a purchase order, purchase terms and conditions, and weekly forecasts; however, because none of the documents, singularly or collectively, "obligated [defendant] to purchase any quantity of products," the agreement between the parties was unenforceable.  Aleris, 718 F. Supp. 2d at 832.  Similarly, in *Acemco*, a "supply agreement," which was similar in scope to the Vendor Application provided only the potential for future transactions between the parties but nothing more concrete.

> Reasonable minds could not construe the [contract] as containing a quantity term because the language specifies no quantity whatsoever. The language instead grants complete discretion to the buyer to deliver purchase orders containing any amount or no amount at its discretion without any other limiting feature.  The grant of complete discretion results in a countless number of possible quantities from zero to infinity.  **'Any' quantity is in fact no quantity at all.**

Acemco, 2005 WL 2810716, at *4 (emphasis supplied); *see also* MacSteel, Inc. v. Eramet North America, 2006 WL 3334019 (E.D. Mich. 2006).

The Vendor Application shares these same fatal characteristics—it did not obligate Kamstra or H&H to make any transaction, and it failed to set forth a quantity term as required by statute.  Because the Sales Agreements all expressly rejected the application of the Vendor Application, this matter is removed from the ambit of other cases where courts have found that a question of fact exists as to the enforceability of a contract.  *Compare* Johnson Controls, Inc. v. TRW Vehicle Safety Sys., Inc., 491 F. Supp. 2d 707, 717 (E.D. Mich. 2007); Great N. Packaging,

Inc. v. Gen. Tire & Rubber Co., 154 Mich. App. 777, 786 (1986).  Unlike *Johnson Controls* and *Great Northern Packaging*, the parties here did not enter any transaction under the Vendor Application that supplies a quantity term or that bound Kamstra to sell H&H a certain quantity of product.  *See, e.g.*, Acemco, 2005 WL 2810716, at *4.  Because the Vendor Application is unenforceable, H&H cannot enforce its forum selection clause, warranty terms, or indemnity provision. Id. (indemnity provision of agreement unenforceable for lack of quantity term).

> b.    The Vendor Application was terminated.

The Michigan UCC permits parties to enter into contracts of unspecified duration, but such contracts are terminable by either party at will.   MCL § 440.2309(2).  In other words, "[t]he rule is rather that where the parties have not agreed upon the term, duration, or manner of termination of such an agreement it is generally deemed to be terminable at the will of either party because they have not agreed otherwise."   Lichnovsky v. Ziebart Int'l Corp., 414 Mich. 228, 240–41 (1982); *accord* Aaron E. Levine & Co., Inc. v. Calkraft Paper Co., 429 F. Supp. 1039, 1050 (E.D. Mich. 1976).  Here, the Vendor Application does not specify its duration or method of termination and, therefore, was terminable at will.[7]  The

---

[7]    A contract lacking such terms may also be "terminated by abandonment." MCL § 440.2309, Cmt. 5; *see also* Shurlow v. Bonthuis, 456 Mich. 730, 735 (1998) ("Although lacking the force of law, the official comments appended to each section of the UCC are useful aids to interpretation and construction.").

Plaintiffs' pleaded absence of a single transaction under the Vendor Application for over two years suffices to show it was abandoned (if it ever was enforceable). In any event, the Sales Agreements each expressly terminated the Vendor Application by, among other things, incorporating several provisions that outright rejected the validity of the Vendor Application. Plaintiffs cannot complain that they lacked notice of Kamstra's termination of the Vendor Application.[8]

### c.   The Vendor Application was superseded.

Plaintiffs' reliance on the Vendor Application is also erroneous because, assuming *arguendo* that it was not terminated and was otherwise enforceable, it was superseded by the Sales Agreements. "Under Michigan law, entering a superseding, inconsistent agreement covering the same subject matter rescinds an earlier contract and operates as a waiver of any claim for breach of the earlier contract not expressly reserved." Kelsey-Hayes Co. v. Galtaco Redlaw Castings Corp., 749 F. Supp. 794, 796 (E.D. Mich. 1990).

The Sales Agreements are wholly and materially inconsistent with the Vendor Application. For example, the Sales Agreements provided for delivery to an independent warehouse in Fort Lauderdale (R. 23-3), but the Vendor

---

[8]   *See, e.g.*, UAW-GM Ctr. for Human Res. v. Workplace Benefits, LLC, 2007 WL 2822778, at *5 (E.D. Mich. Sept. 26, 2007), *on reconsideration*, 06-10450, 2008 WL 283728 (E.D. Mich. Feb. 1, 2008) (email correspondence implying termination provided sufficient notice).

Application required delivery to H&H's warehouse (and payment only then). R. 15-1, App. 1, § 3.  Contrary to the Vendor Application, the Sales Agreements disclaimed all warranties as to trademark or infringement. *Compare* id., § 9 *with* R. 23-3.  Although the Vendor Application selected Michigan as the jurisdiction for disputes (R. 15-1, App. 1, § 18), the Sales Agreements exclusively establish jurisdiction in Groningen. Id. App. 6, Art. 20.   Also, the Vendor Application provided for indemnification of H&H by Kamstra (id, App. 1, § 13), but the Sales Agreements flip this obligation in the opposite direction.  Id., App. 6, Art. 15. Thus, the Vendor Application, if it was ever enforceable, was replaced by the Sales Agreements.  *See, e.g.*, CMI Int'l, Inc. v. Intermet Int'l Corp., 251 Mich. App. 125, 130 (2002); Glazer v. Lehman Bros., Inc., 394 F.3d 444, 460 (6th Cir. 2005).

The fact that the Sales Agreements are integrated definitively establishes that the Vendor Application was replaced.

> A valid integration clause nullifie[s] all prior and contemporaneous agreements, understandings, representations, and warranties, [and] plaintiff may not use parol evidence to contradict the explicit terms of the integration clause."

Hamade v. Sunoco Inc. (R & M), 271 Mich. App. 145, 171 (2006) (reliance on prior agreements or representations barred due to integration clause).

> We note that it is not always necessary for a later contract to contain an integration clause in order for this later contract to supersede an earlier contract.  Rather, if the later contract covers the same subject matter as the earlier contract and contains terms that are inconsistent with the terms of the earlier contract, the later contract may supersede

the earlier contract, unless it appears that this is not what the parties intended. **However, where the later contract contains an integration clause, it cannot be said that the later contract does not supersede the earlier contract on the basis that that is not what the parties intended.** Obviously, in such a situation, the integration clause provides clear evidence to the contrary, i.e., that the parties *did* intend the later contract to supersede the earlier contract. Therefore, the existence of an integration clause in the later contract necessarily indicates that the parties intended the later contract to supersede the earlier contract, and thus provides dispositive evidence with regard to which contract is controlling.

Archambo v. Lawyers Title Ins. Corp., 466 Mich. 402, 414 n. 16 (2002) (emphasis supplied). Accordingly, the integrated Sales Agreements illustrate the parties' intent to enter subsequent, inconsistent agreements regarding essential terms including, without limitation, warranties, forum selection, and choice-of-law. *See also* TIBCO Software, Inc. v. Gordon Food Serv., Inc., 2003 WL 21683850, at *5 (W.D. Mich. July 3, 2003), *relying on* MCL § 440.2202.

> ii.      *The forum selection clause of the Sales Agreements must be enforced and this matter dismissed.*

When H&H accepted the Sales Agreements, it agreed that the courts in Groningen, the Netherlands, would have "exclusive jurisdiction . . . with regard to any and all disputes in connection with the [Sales Agreements] . . . ." R. 15-1, App. 6, Art. 20.1. "A forum selection clause contained in an agreement in connection with an arm's length commercial transaction between two business entities is valid and enforceable." Preferred Capital, Inc. v. Associates in Urology, 453 F.3d 718, 721 (6th Cir. 2006) (dismissal for lack of jurisdiction appropriate in face of forum

selection clause).  Moreover, "Michigan courts have recognized the enforceability of forum selection clauses as the basis for dismissal of an action."  Aircraft Interior Servs., LLC v. Jet Innovations, 2009 WL 3464562, at *1 (E.D. Mich. Oct. 22, 2009), citing Turcheck v. Amerifund Fin., Inc., 272 Mich. App. 341, 344 (2006).[9]

> While not identical, dismissal based on a forum-selection clause is similar to a grant of summary disposition for lack of personal jurisdiction. Although a valid forum-selection clause does not *divest* the Michigan courts of personal jurisdiction over the parties, it evinces the parties' intent to forgo personal jurisdiction in Michigan and consent to *exclusive* jurisdiction in another forum.

Turcheck, 272 Mich. App. at 344.  Plaintiffs allege no basis for the forum selection clause to be disregarded, and Kamstra respectfully asks that it be honored.

### iii.    *Kamstra lacks sufficient minimum contacts with Michigan to support personal jurisdiction.*

Even if the Court chose to ignore the Sales Agreements' forum selection clause, Kamstra's contacts with the State of Michigan are insufficient to establish personal jurisdiction.  Plaintiffs must establish with "reasonable particularity" sufficient contacts to support jurisdiction.  MLS Nat. Med. Evaluation Servs., Inc., 812 F. Supp. 2d at 794. Specifically, Plaintiffs must show that this

> court's exercise of personal jurisdiction in a diversity of citizenship case [is] both (1) authorized by the law of the state in which it sits,

---

[9]    *See also* Wilson v. 5 Choices, LLC, 2017 WL 2882337, at *3 (E.D. Mich. July 6, 2017) ("Plaintiffs . . . all agreed to exclusive jurisdiction in the courts within the state of Utah, and that plainly disposes of the matter before this court.").

and (2) in accordance with the Due Process Clause of the Fourteenth Amendment.

Id.; *see also* Smith v. Amada Mach. Tools Am. Inc., 2017 WL 4339328, at *4 (E.D. Mich. June 12, 2017) (Michelson, J.).  Because Michigan's Supreme Court has construed the state's long-arm statute as co-extensive with due process,[10] the Court need only consider the well-known tripartite test:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Walker Motorsport, Inc. v. Henry Motorsport, Inc., 110 F.3d 66 (6th Cir. 1997). "If any of the three requirements is not met, personal jurisdiction may not be invoked."  Miller v. AXA Winterthur Ins. Co., 694 F.3d 675, 680 (6th Cir. 2012). Finally, Plaintiffs may not rely on "mere bare bones assertions of minimum contacts," and only "the well-pled facts of the complaint, affidavits, or other writings, as distinguished from conclusory allegations, can establish jurisdiction." Smith, 2017 WL 4339328, at *4 (internal citations omitted).

---

[10]     SFS Check, LLC, 990 F. Supp. 2d at 770.  Michigan's long-arm statute (MCL 600.715) has actually been found to exceed the bounds of due process. *See, e.g.*, Oberlies v. Searchmont Resort, Inc., 246 Mich. App. 424, 432(2001).

Plaintiffs have not met even their lesser *prima facie* burden, as there are no allegations showing "with reasonable particularity sufficient contacts" between Kamstra and Michigan for this Court to exercise personal jurisdiction. Id. First, Plaintiffs allege that Erents exchanged emails and telephone calls with Gulas. R. 22, ¶ 43. However, simply exchanging emails and phone calls with Gulas, who happened to be in Michigan—an irrelevant aspect of the parties' relationship—is immaterial and does not demonstrate that Kamstra "intended to establish continuing relationships and obligations in Michigan." Kerry Steel, Inc. v. Paragon Indus., Inc., 106 F.3d 147, 151 (6th Cir. 1997) ("It is immaterial that Paragon placed telephone calls and sent faxes to Kerry Steel in Michigan."); Calphalon Corp. v. Rowlette, 228 F.3d 718, 723 (6th Cir. 2000); *see also* Rice v. Karsch, 154 Fed. Appx. 454, 463 (6th Cir. 2005) (accord).

Second, Plaintiffs allege that Erents made two trips to Michigan to visit Gulas. R. 22, ¶¶ 28, 44. However, Plaintiffs do not contest Erents' testimony that no transaction occurred in Michigan or that his trips to Michigan did not concern any of the transactions involved in this case. *Compare* R. 15-2, ¶ 16 *with* R. 22, ¶¶ 28–29, 44. Again, this contact with Michigan was "fortuitous" and "attenuated" because H&H having its offices in Michigan was irrelevant to Kamstra's business with H&H. *See* Walker Motorsport, Inc., 110 F.3d at 66; Calphalon Corp., 228 F.3d at 723 (6th Cir. 2000).

15

In short, Plaintiffs cannot demonstrate sufficient "minimum contacts" between Kamstra and Michigan to establish jurisdiction.  Plaintiffs do not allege that any transactions occurred in Michigan, and the Kamstra Invoices prove that none of the Abbott strips were shipped to Michigan. R. 23-3. Further, "the mere fact that [Kamstra] entered into a contract with a Michigan corporation does not mean that [it] purposefully availed itself of the 'benefits and protections' of Michigan law." Kerry Steel, Inc., 106 F.3d at 151.  Indeed, the Sales Agreements incorporated a choice-of-law and forum selection clause that removes any doubt that Kamstra had no expectation of relying on the "benefits and protections of Michigan law."  Walker Motorsport, Inc., 110 F.3d at 66.  Accordingly, "it would be unreasonable to exercise jurisdiction over [Kamstra] in this case, given the minimal connections between [Kamstra] and the State of Michigan." Id.

**B.    Plaintiffs have failed to state claims upon which relief may be granted and, therefore, the Court should dismiss the Second Amended Complaint.**

Rule 12(b)(6) provides for dismissal for failure to state a claim upon which relief may be granted. "To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n, 176 F.3d 315, 319 (6th Cir. 1999).  "[A] complaint must provide sufficient facts to state a claim to relief that is

plausible on its face." <u>Wilson</u>, 2017 WL 2882337, at *3. The "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).

> i. *Plaintiffs have failed to state a claim for breach of contract because the Vendor Application is unenforceable.*

In Count I of the Second Amended Complaint, Plaintiffs contend that Kamstra breached the Vendor Application. As discussed at length herein and Kamstra's previous Motion to Dismiss (<u>R</u>. 15), the Vendor Application is not valid or enforceable. Further, by incorporating the Sales Agreements in their Second Amended Complaint, Plaintiffs have negated the Vendor Application on the face of their pleading. Therefore, this claim must be dismissed.

> ii. *Plaintiffs have failed to state a claim for breach of warranty because the alleged warranties are unenforceable and were disclaimed.*

In Count II, Plaintiffs assert that Kamstra breached express warranties in the Vendor Application[11] and the implied warranty identified in MCL 400.2312, as it pertains to infringement. The statute provides in pertinent part:

> (3) **Unless otherwise agreed** a seller who is a merchant regularly dealing in goods of the kind warrants that the goods shall be delivered free of the rightful claim of any third person by way of infringement or the like but a buyer who furnishes specifications to the seller must hold the seller harmless against any such claim which arises out of compliance with the specifications.

---

[11] Obviously, there can be no claim for breach of an unenforceable contract.

17

MCL § 440.2312 (emphasis supplied).  The infringement warranty is waivable when parties "otherwise agree."  Id.; Park-Ohio Indus., Inc. v. Tucker Induction Sys., Ltd., 1988 WL 1045372, at *2 (E.D. Mich. Mar. 7, 1988).  Plaintiffs' warranty claim is baseless because each and every sale of Abbott strips to H&H was accompanied by a disclaimer of such an infringement warranty, as reflected in the Sales Agreements.  Accordingly, the parties "otherwise agreed" to waive any infringement warranty.  Id.  Count II must be dismissed.

      *iii.*      *Plaintiffs have failed to state a claim for fraudulent inducement.*

      a.      H&H's fraud claim fails because it is barred by the economic loss rule.

Only H&H seeks judgment in the fraud claim (Count III), but it fails as a matter of law because it is precluded by the economic loss rule, which Michigan adopted[12] to bar tort claims like H&H's "where damages arise out of the commercial sale of goods and the losses incurred are purely economic."  Allmand Associates, Inc. v. Hercules Inc., 960 F. Supp. 1216, 1222–23 (E.D. Mich. 1997).[13] The doctrine bars fraud claims "where the only misrepresentation by the dishonest

---

[12]    *See* Neibarger v. Universal Cooperatives, Inc., 439 Mich. 512 (1992).

[13]    Allmand, 960 F. Supp. at 1227 ("Allmand's losses are quintessential economic losses.  At the heart of Allmand's fraud claim is the fact that Allmand purchased products which proved inadequate for their purposes, causing it lost profits of the type compensable in a suit under the U.C.C.  The damages merely reflect a concern about the quality expected by the buyer, Allmand, and promised by the seller, Hercules, which is in essence, a warranty action.").

party concerns the quality or character of the goods sold, [because] the other party is still free to negotiate warranty and other terms to account for possible defects in the goods." Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc., 209 Mich. App. 365, 373 (1995).

> Such fraud is not extraneous to the contractual dispute among the parties, but is instead but another thread in the fabric of [the] plaintiffs' contract claim . . . . [It] is undergirded by factual allegations identical to those supporting their breach of contract counts . . . .

Huron Tool, 209 Mich. App. at 373.  In other words, fraudulent inducement cannot exist when the allegations are "inextricably related to the nature of the product and the only damages are economic." Murphy v. The Proctor & Gamble Co., 695 F. Supp. 2d 600, 602 (E.D. Mich. 2010); *see, e.g.*, Woodland Harvesting, Inc. v. Georgia Pac. Corp., 2010 WL 2813339, at *5 (E.D. Mich. July 14, 2010).  Thus, for example, the plaintiff in *Huron Tool* could not substantiate his fraud claim where the representations "concern[ed] the quality and characteristics of the software system sold by defendants [to plaintiff]. These representations are indistinguishable from the terms of the contract and warranty that plaintiff alleges were breached." Huron Tool, 209 Mich. App. at 375 (1995).  In *Murphy*, the doctrine barred fraud claims that a manufacturer sold razor blades of differing quality than warranted.  Murphy, 695 F. Supp. 2d at 608 (finding such alleged fraud was "inextricably related to the nature of the product").

19

H&H's fraud claim seeks the same damages as those arising from their breach of contract and warranty claims.  R. 22, ¶ 105.  Indeed, H&H does not "allege any wrongdoing by [Kamstra] independent of [its alleged] breach of contract and warranty." Huron Tool, 209 Mich. App. at 375.  Rather, as evidenced by their contract and warranty claims, H&H's grievance is inextricably tied to the alleged "quality and characteristics" of the Abbott strips.  Thus, H&H (or Goldman or Gulas, as purported third-party beneficiaries of the Vendor Application) cannot maintain a fraud claim.  Id.; Murphy, 695 F. Supp. 2d at 608; *see also* Ram Int'l, Inc. v. ADT Sec. Servs., Inc., 555 Fed. Appx. 493, 500 (6th Cir. 2014).

> b.   Gulas and Goldman have failed to plead a fraud claim
>      with the sufficient particularity.

Although only H&H pleads for judgment, Count III also contains allegations that Gulas as well as H&H received representations, and that somehow he and Goldman were damaged.  R. 22, ¶¶ 98, 103–105.  However, only H&H alleged that it was induced to enter into "the Contract" or any of the Sales Agreements.  Id., ¶ 100.  Fed. R. Civ. P. 9(b) requires that Gulas and Goldman plead each element of fraud with sufficient particularity. They have not done so.  Under Michigan law, these elements are:

> (1) that the defendant made a misrepresentation; (2) that it was false;
> (3) that defendant knew at the time of making the statement that it was
> false or was reckless with regard to knowledge of the truth; (4) that
> defendant made it with the intention that plaintiff would rely on it; (5)
> that plaintiff did rely and act on the misrepresentation; and (6) that

plaintiff suffered injury as a result.  The failure to allege and establish each element independently defeats a claim of fraud. *Id.*

Wiggins v. Argent Mortgage Co., LLC, 945 F. Supp. 2d 817, 824 (E.D. Mich. 2013), aff'd (Mar. 31, 2014).   The Second Amended Complaint does not allege that Kamstra made any misrepresentation to Goldman or that he relied on or was induced to take any action as a result of any such misrepresentation.  *See* R. 22, ¶¶ 94–106.  It also does not allege that Gulas was induced to take any action in his personal capacity, as opposed to acting as an agent for H&H. Id., ¶ 104 ("As a consequence, Gulas purchased the Strips on behalf of H&H. . . .").  Further, there is no specific allegation that Gulas or Goldman suffered damages that are not simply derivative of H&H's alleged damages.[14]   Therefore, they have failed to state a claim for fraud. *See, e.g.* Wiggins, 945 F. Supp. 2d at 824; Tann v. Chase Home Fin., L.L.C., 2011 WL 3799841, at *9 (E.D. Mich. Aug. 26, 2011).

> iv.   *Gulas and Goldman have failed to state a claim because they lack standing and were not third-party beneficiaries under the Vendor Application.*

---

[14]   Gulas and Goldman also lack standing to sue for fraud because their alleged injuries are derivative.  "[W]here the alleged injury to the individual results only from the injury to the corporation, the injury is merely derivative and the individual does not have a right of action against the third party."  *See, e.g.*, Strickland v. Douglas, 2011 WL 6268189, at *3 (Mich. Ct. App. Dec. 15, 2011); *see also* Warren v. Manufacturers Nat. Bank of Detroit, 759 F.2d 542, 544–45 (6th Cir. 1985) ("The alleged acts of fraud were directed not toward plaintiff as an employee of Paragon, but rather were directed to Paragon as a corporate entity or person. Assuming the truth of plaintiff's claim, the fraudulent misrepresentation was made to Paragon, not to any individual as such.").

Gulas and Goldman also have failed to state any claim for which relief can be granted because they were not third-party beneficiaries of the Vendor Application. As an initial matter, the Vendor Application is unenforceable, and Gulas and Goldman cannot rely on its terms. *See* Acemco, 2005 WL 2810716, at *7. The fact that Gulas and Goldman purport to be third-party beneficiaries does not grant them a special right to enforce an invalidated contract. *See, e.g.*, Koenig v. City of S. Haven, 460 Mich. 667, 684 (1999), *citing* MCL § 600.1405 ("A third party may not enforce a promise if the underlying contract is infirm.").

Assuming *arguendo* that the Vendor Application was enforceable, Gulas' and Goldman's claims still fail. To have standing to enforce a contract as a third-party beneficiary, the third-party must show that the contract reflects the express or implied intention of the parties to the contract to benefit the third-party. Ahmad v. Wells Fargo Bank, NA, 861 F. Supp. 2d 818, 828 (E.D. Mich. 2012); Grant v. Trinity Health-Michigan, 390 F. Supp. 2d 643, 651 (E.D. Mich. 2005). Michigan has defined who has standing as a third-party beneficiary. *See* MCL § 600.1405.

> [T]he plain language of this statute reflects that not every person incidentally benefitted by a contractual promise has a right to sue for breach of that promise, but rather only if the promisor has undertaken to give or to do or refrain from doing something *directly* to or for said person. By using the modifier 'directly,' the Legislature intended to assure that contracting parties are clearly aware that the scope of their contractual undertakings encompasses a third party, **directly referred to in the contract**, before the third party is able to enforce the contract.

Boylan v. Fifty Eight LLC, 289 Mich. App. 709, 728–29 (2010) (emphasis supplied). In other words, "an express promise to act for the benefit of a third-party must be made in order to create third-party beneficiary status." Riley v. Ameritech Corp., Inc., 147 F. Supp. 2d 762, 774 (E.D. Mich. 2001).

> [O]nly intended, not incidental, third-party beneficiaries may sue for a breach of a contractual promise in their favor . . . and a court should look no further than the form and meaning of the contract itself to determine whether a party is an intended third-party beneficiary within the meaning of 1405.

Schmalfeldt v. N. Pointe Ins. Co., 469 Mich. 422, 428 (2003). Gulas' and Goldman's bare allegation that they were "intended third-party beneficiaries" of the Vendor Application is insufficient, as nothing within the Vendor Application itself identifies Gulas or Goldman as "intended third-party beneficiaries." By its own terms, the only intended beneficiary of the Vendor Application was H&H itself—Gulas and Goldman are not referred to in the Vendor Application.[15] R. 15-1, App. 1, ¶ 13. In the absence of "contractual language demonstrating an undertaking directly for the benefit of [Gulas and Goldman] . . . [Gulas and Goldman] cannot establish that [they were] a third-party beneficiary" of the

---

[15] *Cf.* Boylan, 289 Mich. App. at 730 ("The contract nowhere refers to [plaintiff]. At best, [plaintiff] qualifies as an incidental beneficiary of the portion of the contract requiring [defendant] to 'provide the necessary protection to prevent damage, injury or loss . . . .") *with* Vanerian v. Charles L. Pugh Co., 279 Mich. App. 431, 436 (2008) (plaintiff was a third-party beneficiary because she was "expressly referred to in the contract.").

Vendor Application under Section 1405.   <u>Koenig</u>, 460 Mich. at 683–84. Therefore, this Court should dismiss all claims by Gulas and Goldman.

> *v.*      *H&H has failed to state a claim for declaratory judgment.*

In Count IV, H&H (but not Gulas or Goldman) tacked on a claim for declaratory judgment in an effort to cling to this Court.  It should be dismissed because this Court lacks personal jurisdiction and the Sales Agreements mandate disputes be resolved in the Netherlands.  Even if the Court had jurisdiction, and the Vendor Application, which forms the basis of the declaratory judgment claim (*see* <u>R.</u> 22, ¶ 107–11), was valid, it is under no obligation to entertain the claim. "[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act." <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 282 (1995); <u>Florists' Transworld Delivery, Inc. v. Fleurop-Interflora</u>, 261 F. Supp. 2d 837, 846 (E.D. Mich. 2003).  H&H does not assert any "uncertainty, insecurity, and controversy giving rise to the proceeding." <u>Id.</u>  Rather, H&H's allegations make clear that the underlying claim—regardless of merit—has ripened into a cause of action and that declaratory judgment is "redundant to the relief already sought." <u>Florists' Transworld Delivery, Inc.</u>, 261 F. Supp. 2d at 846 ("[T]he Court finds that Plaintiffs have already sought an alternative remedy that is better or more effective. Plaintiffs have filed a fourteen Count Second Amended Complaint, which includes monetary and injunctive requests for relief."); <u>O'Brien</u>

v. BAC Home Loan Servicing, LP, 2011 WL 1193659, at *2 (E.D. Mich. Mar. 28, 2011).[16]  Because declaratory judgment is redundant to H&H's claim for indemnification (*compare* R. 22, ¶¶ 80–87 *with* id., ¶ 109) and is an overall inferior remedy, H&H cannot rely on it to prolong this action.  Id.; Osprey-Troy Officentre L.L.C. v. World All. Fin. Corp., 822 F. Supp. 2d 700, 710 (E.D. Mich. 2011) (declaratory judgment claim is not "an independent cause of action.").

Respectfully submitted, this 27th day of April, 2018.

/s/ Steven D. Ginsburg
STEVEN D. GINSBURG
*Admitted via E. D. Mich. LR 83.20*
CLAUDIA D. POLHEMUS
Michigan Bar No. P81372

**LITCHFIELD CAVO LLP**
1300 Parkwood Circle SE, Suite 170
Atlanta, GA 30339-2143
Phone: (770) 628-7111
Fax: (770) 628-7101
ginsburg@litchfieldcavo.com
diaz@litchfieldcavo.com

*Counsel for Defendant*

---

[16]  *See* 51382 Gratiot Ave. Holdings, LLC v. Chesterfield Dev. Co., LLC, 835 F. Supp. 2d 384, 405 (E.D. Mich. 2011) ("Defendants' request for a declaratory judgment [is] entirely redundant of [their] claims for legal relief. A declaratory judgment alone cannot settle the dispute between the parties, and a ruling on the complaint and the other counterclaims provides a more effective remedy.").

## **CERTIFICATE OF SERVICE**

I hereby certify that on the date set forth below, I electronically filed the

foregoing paper with the Clerk of the Court using the ECF system which will send

notification of such filing to the following:

**Ethan R. Holtz**
Jaffe Raitt Heuer & Weiss
Eholtz@jaffelaw.com
*Counsel for Plaintiffs*

This 27th day of April, 2018.

/s/ Steven D. Ginsburg
STEVEN D. GINSBURG
*Admitted via E. D. Mich. LR 83.20*
CLAUDIA D. POLHEMUS
Michigan Bar No. P81372

**LITCHFIELD CAVO LLP**
1300 Parkwood Circle SE, Suite 170
Atlanta, GA 30339-2143
Phone: (770) 628-7111
Fax: (770) 628-7101
ginsburg@litchfieldcavo.com
diaz@litchfieldcavo.com

*Counsel for Defendant*