H&H WHOLESALE SERVICES, INC.,

     Plaintiff,

v.

KAMSTRA INTERNATIONAL, B.V.,
B&S INTERNATIONAL B.V.,
CLASS HAIR CARE (C.H.C.) B.V, and
KAFA B.V.,

     Defendants.

Case No. 2:17-cv-13422-LJM-APP
Honorable Laurie J. Michelson

---

## OPINION AND ORDER DENYING H&H'S MOTION FOR RECONSIDERATION BUT GRANTING H&H'S REQUEST FOR A RULE 54(B) CERTIFICATION [133]

Following extensive briefing and in an extensive opinion, the Court granted Defendant B&S International B.V.'s motion to dismiss. *See generally H&H Wholesale Servs., Inc. v. Kamstra Int'l, B.V.*, No. 17-13422, 2020 WL 7338567 (E.D. Mich. Dec. 14, 2020). The Court found that Plaintiff H&H Wholesale Services, Inc. had not made a prima facie showing that B&S was and is Defendant Kamstra's alter ego. And because H&H's only basis for asserting personal jurisdiction over B&S was that B&S was Kamstra's alter ego, the Court dismissed B&S from the case. H&H now claims this Court committed several errors in doing so, and thus moves for reconsideration. (ECF No. 133.) In the alternative, it asks this Court to certify the personal-jurisdiction issue for interlocutory appeal.

H&H has not shown this Court clearly erred in finding that H&H had not made a prima facie showing that B&S and Kamstra are alter egos. So H&H's request for reconsideration will be denied. But the Court will permit H&H to seek interlocutory appeal.

# I.

## A.

There is no need to summarize everything that was said before. But the Court will recap two portions of its prior opinion, because that summary will help explain the resolution of H&H's current motion.

The first point worth revisiting is the standard governing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2). In the prior opinion, the Court explained the three-level hierarchy for the parties' allegations when the Court elects to proceed without holding an evidentiary hearing to resolve disputed issues of fact. *H&H*, 2020 WL 7338567, at *5.

At the first level are the plaintiff's factual allegations in its complaint. These are taken as true, absent any contrary factual allegation that ranks higher in the hierarchy of allegations. *See Serras v. First Tennessee Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989) (providing that the Court must construe complaint and affidavits "in the light most favorable to the plaintiff"); *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991) (similar).

At the second level of the hierarchy are the allegations in the defendant's affidavit. If a factual allegation in that sworn statement contradicts a factual allegation in the plaintiff's complaint, the Court no longer credits the unsworn, controverted allegation in the complaint; it can instead rely on the sworn allegation of the defendant. *Parker v. Winwood*, 938 F.3d 833, 839–40 (6th Cir. 2019) ("[B]ecause Mervyn submitted affirmative evidence showing that the court lacked jurisdiction over him, mere allegations of jurisdiction are not enough. Instead, plaintiffs were required to set forth, by affidavit or otherwise, specific facts showing jurisdiction." (internal citations omitted)); *Serras*, 875 F.2d at 1214 ("[T]he plaintiff may not rest on his pleadings to answer the movant's affidavits[.]"); *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir. 1974)

(providing that where a defendant's personal-jurisdiction challenge is "supported by affidavits" "the non-moving party may not rest upon allegations or denials in his pleadings but his response by affidavit or otherwise must set forth specific facts showing that the court has jurisdiction").

At the top of the hierarchy is the plaintiff's affidavit; the Court previously described it as "the ultimate trump card." *H&H*, 2020 WL 7338567, at *5. If a factual allegation in the plaintiff's affidavit contradicts a factual allegation in the defendant's affidavit, the Court no longer credits the controverted allegation in the defendant's affidavit, it should instead credit the sworn allegation of the plaintiff. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) ("[T]his court will not consider facts proffered by the defendant that conflict with those offered by the plaintiff." (citing *Serras*, 875 F.2d at 1214)).

This three-level hierarchy is set out in binding precedent, which the Court cited in its prior opinion. *See Weller*, 504 F.2d at 930; *Serras*, 875 F.2d at 1214–15; *Theunissen*, 935 F.2d at 1459. And based on that binding precedent, the Court summarized the hierarchy: "in short, the Court accepts the non-conclusory factual allegations in the complaint unless the allegations are contradicted by the defendant's affidavit; but the plaintiff's affidavit is the ultimate trump card— the facts asserted in the plaintiff's affidavit are accepted as true for purposes of resolving the motion even if they contradict facts asserted in the defendant's affidavit." *H&H*, 2020 WL 7338567, at *5.

Indeed, although the Court did not realize it when it drafted its prior opinion, the Sixth Circuit has said essentially the same thing in a recent, published opinion:

> Motions to dismiss under Rule 12(b)(2) involve burden shifting. The plaintiff must first make a prima facie case, which can be done merely through the complaint. The burden then shifts to the defendant, whose motion to dismiss must be properly supported with evidence. Once the defendant has met the burden, it returns to the plaintiff, who may no longer stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction.

*Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020) (internal quotation marks and citations omitted).

Aside from the legal standard, it is also worth recapping the Court's finding that H&H had not made a prima facie showing that B&S was Kamstra's alter ego. The Court explained that B&S and Kamstra had a distant parent-subsidiary relationship: B&S was the corporate great-grandparent of Kamstra. *H&H*, 2020 WL 7338567, at *2. And in deciding that H&H had not adequately shown that B&S was Kamstra's alter ego, the Court relied on facts from B&S' affidavit. In particular, based on B&S' affidavit, the Court found that "Kamstra did not buy its supplies or inventory from B&S," "B&S and Kamstra kept separate financial records and bank accounts," "B&S and Kamstra had separate inventory and assets," "Kamstra was not wholly capitalized by B&S," and "B&S did not manage Kamstra's payroll or pay Kamstra's payroll expenses." *Id.* at *7. And also relying on B&S' affidavit, the Court explained, "As for the chain of command, while Erents [of Kamstra] reported to Bottenberg who reported to Meulman [of B&S], Defendants aver that the buck stopped with Bottenberg; they say he handled the day-to-day operations of Kamstra. And Bottenberg 'was not an employee, officer, or director of B&S.'" *Id.* at *8 (quoting B&S' affidavit). The Court thus found that "H&H has not adequately alleged or evidenced that B&S controlled the day-to-day operations of Kamstra." *Id.* All things considered, the Court found that "this is not a case where equity dictates that corporate formalities be set aside and that a parent be held liable for the acts of its subsidiary (or, more accurately, its sub-sub-subsidiary)." *Id.*

**B.**

Fourteen days after this Court declined to exercise personal jurisdiction over H&H's claims against B&S, H&H filed a motion for reconsideration. (ECF No. 133.) H&H believes this Court erred in several ways.

4

## II.

Regarding the legal standard that governs its motion for reconsideration, H&H relies on not one but four procedural hooks. In particular, H&H seeks reconsideration under Federal Rule of Civil Procedure 59(e) and 60(b)(1). It also seeks reconsideration under Eastern District of Michigan Local Rule 7.1(h). Further, H&H says that if this Court declines to revise its ruling under those three rules, the Court should certify its order as a "final judgment" under Rule 54(b) so that H&H can take an interlocutory appeal. (While there is no shortage of it in this case, raising every possible ground for relief is usually not the best course in litigation. *See* Antonin Scalia and Bryan A. Garner, *Making Your Case: The Art of Persuading Judges* 22 (2008) ("Take pains to select your best arguments. Concentrate your fire. . . . If you're not going to win on your stronger arguments, you surely won't win on your weaker ones. It is the skill of the lawyer to know which is which.").)

The Court doubts that Rule 59(e) applies here. Rule 59(e) uses the word "judgment": "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." The Court entered no judgment. *See* Fed. R. Civ. P. 58(a) ("Every judgment and amended judgment must be set out in a separate document."). And although the Court's order dismissed B&S from the case, H&H still has pending claims against Kamstra and Kafa. And in that scenario, Rule 54(b) strongly suggests that the Court's order was not a "judgment." It says, "any order or other decision, *however designated*, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the *entry of a judgment* adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54 (emphasis added). So it seems unlikely that Rule 59(e) applies here.

As for Rule 60(b)? The advisory committee notes explain, "The addition of the qualifying word 'final' emphasizes the character of the judgments, orders or proceedings from which Rule 60(b) affords relief; and hence interlocutory judgments are not brought within the restrictions of the rule . . . ." Again, this Court did not enter a judgment; nor did it dispose of all claims in this case. *See* 10 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2654 (4th ed.) ("Absent a certification under Rule 54(b) any order in a multiple-party or multiple-claim action, even if it appears to adjudicate a separable portion of the controversy, is interlocutory.").

What about Local Rule 7.1(h)? That rule does not restrict reconsideration to judgments or final orders. *See* E.D. Mich. LR 7.1(h); *Roe v. Ford Motor Co.*, 439 F. Supp. 3d 922, 925 (E.D. Mich. 2020) ("This District's corresponding local rule is broader [than Rule 59(e)] in the sense that it permits reconsideration of interlocutory orders too."). So, as between Rule 59(e) or 60(b)(1) on the one hand, and Local Rule 7.1(h) on the other, the Local Rule seems to be the appropriate tool for H&H's job.

Ultimately, though, it doesn't really matter which path the Court pursues. H&H does not assert that there was an intervening change in law or that it only just discovered new, material evidence. Instead, its basis for reconsideration is that the Court erred. As such, under any of the three procedural devices, H&H has the burden of showing that the Court made a clear error, and that if that clear error were corrected, the outcome would be different. *See Bank of California, N.A. v. Arthur Andersen & Co.*, 709 F.2d 1174, 1177 (7th Cir. 1983) ("Rule 60(b)(1) is intended to allow clear errors to be corrected without the cost and delay of an appeal."), *quoted with approval in Cacevic v. City of Hazel Park*, 226 F.3d 483, 490 (6th Cir. 2000); *Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 474 (6th Cir. 2009) ("To grant a motion filed pursuant to Rule 59(e)[,] . . . there must be (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in

controlling law; or (4) a need to prevent manifest injustice."); *Roe*, 439 F. Supp. 3d at 925 (providing that party seeking reconsideration under Local Rule 7.1(h) must demonstrate "clear error"). As explained next, H&H has not shown the Court clearly erred.

## III.

Simplifying slightly, H&H makes three claims of error: that the Court used the wrong legal standard for deciding a Rule 12(b)(2) motion, that the Court did not fully appreciate that B&S orchestrated Kamstra's shutdown so that Kamstra could avoid its liabilities, and that the Court did not adequately consider an affidavit filed by B&S' CFO.

## A.

The Court takes up first H&H's claim that the Court applied the wrong standard in deciding a Rule 12(b)(2) motion on the papers and, under the right standard, H&H did make a prima facie showing that B&S and Kamstra are alter egos.

H&H's argument relies heavily on *Serras v. First Tennessee Bank National Association*, 875 F.2d 1212 (6th Cir. 1989). Notably, this was a case the Court cited in its prior opinion, not one cited by H&H in its briefing. In other words, the Court uncovered the proper legal standard and it explained the governing case law. Now H&H appears to agree with that case law, but not the Court's application of it. H&H quotes two portions of *Serras*. The first:

> The court's solicitude for defendants who object to its personal jurisdiction is always tempered, however, by its concern that the door to a federal courtroom not be slammed in the face of a plaintiff seeking to invoke its powers where there is, in fact, no defect in personal jurisdiction. *Particularly where the disputed jurisdictional facts are intimately intertwined with the parties' dispute on the merits, a trial court should not require plaintiffs to mount proof which would, in effect, establish the validity of their claims and their right to the relief sought.*

*Id.* at 1215 (emphasis added). And the second:

> Certain facts [in this case], however, are disputed. As to these facts, the District Court was required to elect one of two courses: determine on written submissions

whether the plaintiffs had made a prima facie showing on facts sufficient to establish personal jurisdiction, or exercise its discretion to hold an evidentiary hearing (pretrial or at trial). *Because it chose the former option, it was obligated to look solely to the plaintiff's pleadings and affidavits: if those stated the facts with sufficient particularity, it was obligated to ignore contrary assertions by the Bank.*

*Id.* (emphasis added). H&H points out that whether B&S and Kamstra are alter egos is both a merits and personal-jurisdiction question. And, H&H argues, when merits and jurisdiction are intertwined, the passages from *Serras* show that the usual rules governing a Rule 12(b)(2) motion do not apply. (*See* ECF No. 133, PageID.6481.) It follows, says H&H, that the Court "should not have considered B&S's affidavits in deciding the motion." (ECF No. 133, PageID.6486 (capitalization altered); *see also id.* at PageID.6489 ("the court should not have considered [B&S's] contradicting affidavits")).)

H&H's argument could be asserting several different claims of error. As none are convincing, the Court will indulge them all.

**1.**

Perhaps H&H's claim is that there are two personal-jurisdiction standards, one for when merits and jurisdiction are separate, and one for when they are intertwined. And, apparently, H&H believes that the Court used the wrong one.

If this is H&H's claim, H&H misreads *Serras*. The point *Serras* was making is that when merits and jurisdiction are intertwined, it might make sense for a district court to proceed on the papers and only require the plaintiff to make a prima facie showing of personal jurisdiction. The alternative—holding an evidentiary hearing and requiring the plaintiff to prove facts by a preponderance of the evidence—might be wasteful when merits and jurisdiction are linked. Because the plaintiff already has to prove the merits at trial, it might be more efficient to decide

the intertwined personal-jurisdiction then too. *See Serras*, 875 F.2d at 1215 ("Judicial resources may be more efficiently deployed if the court holds but one hearing on the contested facts.").

Indeed, *Serras* cited footnote two of *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280 (9th Cir. 1977). There, the Ninth Circuit explained that when jurisdictional facts are intertwined with the merits, it may make sense to forgo a pretrial evidentiary hearing and instead only demand that the plaintiff "establish a prima facie showing of jurisdictional facts with affidavits and perhaps discovery materials." *Id.* at 1285 n.2. That way facts underlying both jurisdiction and merits can be proven at trial, "where a plaintiff may present his case in a coherent, orderly fashion and without the risk of prejudicing his case on the merits." *Id.*

In short, *Serras* did not establish a separate standard for when jurisdiction is intertwined with the merits. Instead *Serras* advised district courts on an efficient manner for addressing a personal-jurisdiction dispute when jurisdiction is intertwined with the merits: skip a pretrial evidentiary hearing where the plaintiff would have to prove facts by a preponderance, instead decide the issue on the papers and demand only a lighter prima facie showing, and then require the plaintiff to make the preponderance showing at trial when the plaintiff is already tasked with proving the merits.

**2.**

H&H might also be relying on *Serras* to claim that this Court placed a heavier burden of proof on H&H than was warranted. After all, the passage of *Serras* that H&H quotes states, "where the disputed jurisdictional facts are intimately intertwined with the parties' dispute on the merits, a trial court should not require plaintiffs to mount proof which would, in effect, establish the validity of their claims and their right to the relief sought." *Serras*, 875 F.2d at 1215.

If this is H&H's argument, it too is unavailing. The Court expressly stated, "the Court will decide the motion on the pleadings and affidavits. That means that H&H need establish only a prima facie case of personal jurisdiction." *H&H*, 2020 WL 7338567, at *6. And after analyzing all the facts relevant to the alter ego analysis, this Court again expressly referenced the prima facie standard: "All things considered then, H&H has not made a prima facie showing that B&S and Kamstra are alter egos." *Id.* at *8. So this Court did not require H&H to "mount proof which would, in effect, establish the validity of [its] claims."

**3.**

H&H's reliance on *Serras* raises a third possibility. Perhaps H&H's claim of error is that this Court was supposed to accept as true the factual allegations in its complaint (as opposed to its affidavit) even if those allegations were contradicted by sworn factual allegations in B&S' affidavit.

If this is H&H's argument, it is foreclosed by binding precedent. *See Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020) ("Once the defendant has met the burden [of supporting its Rule 12(b)(2) motion with evidence], [the burden] returns to the plaintiff, who may no longer stand on his pleadings but must, *by affidavit or otherwise*, set forth specific facts showing that the court has jurisdiction." (emphasis added)); *Parker v. Winwood*, 938 F.3d 833, 839–40 (6th Cir. 2019) ("[B]ecause Mervyn submitted affirmative evidence showing that the court lacked jurisdiction over him, *mere allegations of jurisdiction are not enough*. Instead, plaintiffs were required to set forth, by affidavit or otherwise, specific facts showing jurisdiction." (emphasis added) (internal citations omitted)); *Serras*, 875 F.2d at 1214 ("[T]he plaintiff may not rest on his pleadings to answer the movant's affidavits[.]"); *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir. 1974) (providing that where a defendant's personal-jurisdiction challenge is "supported

by affidavits," "the non-moving party may not rest upon allegations or denials in his pleadings but his response by affidavit or otherwise must set forth specific facts showing that the court has jurisdiction").

**4.**

H&H's reliance on *Serras* raises yet a fourth possible claim of error. Perhaps H&H believes that this Court should not have considered B&S' affidavit at all—even the factual allegations in B&S' affidavit that were not contradicted by H&H's affidavit or evidence. Indeed, at several points in its motion for reconsideration, H&H refers to B&S' "contrary affidavit" as a unit, and H&H expressly says, "the Court should not have considered B&S's affidavits in deciding the motion." (ECF No. 133, PageID.6486 (capitalization altered); *see also* ECF No. 133, PageID.6482.) So, perhaps, H&H believes that B&S' affidavits in their entirety were off the table, and the Court was limited to the facts set out in H&H's complaint and affidavit.

This claim of error is also without merit. It is true that "the court disposing of a 12(b)(2) motion does not weigh the controverting assertions of the party seeking dismissal." *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991) (citing *Serras*, 875 F.2d at 1214). But this rule is not a blanket covering the entirety of the defendant's affidavit. The proper inquiry is more granular: when deciding a Rule 12(b)(2) motion on the papers, the Court cannot credit factual allegations within the defendant's affidavit that are contrary to factual allegations within the plaintiff's affidavit. *See Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) ("[T]his court will not consider *facts* proffered by the defendant that conflict with those offered by the plaintiff." (emphasis added) (citing *Serras*, 875 F.2d at 1214)). The distinction between a contrary affidavit as a unit and contrary allegations within affidavits is important both as a general matter and specifically in this case.

11

Start with general. The Sixth Circuit has repeatedly stated that in deciding a Rule 12(b)(2) motion, a district court can credit factual allegations in a defendant's affidavit that are not contradicted by factual allegations in the plaintiff's affidavit. *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012) ("[W]e do not weigh the facts disputed by the parties but instead consider the pleadings in the light most favorable to the plaintiff, although we may consider the defendant's undisputed factual assertions."); *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 152–53 (6th Cir. 1997) ("In deciding a motion to dismiss for want of personal jurisdiction the court must, of course, view the affidavits, pleadings, and documentary evidence in the light most favorable to the plaintiff. But *Theunissen* does not require a court to ignore undisputed factual representations of the defendant which are consistent with the representations of the plaintiff."). Contrary to this precedent, H&H seems to think that a court is limited to the allegations in its complaint and affidavit—period. But that would be akin to a Rule 12(b)(6) motion where the defendant is restricted to what the plaintiff has alleged and cannot fill in the plaintiff's silence with additional facts. But that is simply not the standard on a Rule 12(b)(2) motion—even one decided solely on the papers. *See Conn*, 667 F.3d at 711; *Kerry Steel*, 106 F.3d at 152–53.

As for this case specifically, H&H has not shown that any of the factual allegations from B&S' affidavit that this Court relied on are contrary to any of its evidence. Although H&H's motion for reconsideration includes a laundry list of allegations from B&S' affidavit that this Court credited (*see* ECF No. 133, PageID.6490–6491), H&H has not shown how any of those allegations contradict allegations in its affidavit or the evidence attached to its affidavit. In drafting the prior opinion, the Court was well aware that B&S provided factual information beyond what was set forth in H&H's complaint and affidavit (e.g., that Bottenberg made the day-to-day decisions at Kamstra and that Bottenberg was not an employee of B&S). But the Court was also careful to

verify that the allegations from B&S' affidavit that it credited were not contrary to any allegations in H&H's affidavit or contrary to the evidence attached to H&H's affidavit. (And, although a plaintiff cannot rest on its complaint in the face of the defendant's affidavit, the overwhelming majority of B&S' allegations do not even contradict allegations in the complaint. For instance, while H&H's complaint asserts that B&S and Kamstra shared financial departments and filed consolidated tax returns, B&S' affidavit says that B&S and Kamstra had separate financial records and that each paid their own share of taxes. So the complaint and B&S' affidavit are consistent with one another on those points.) Thus, H&H has not shown that the Court erred in considering the factual matter in B&S' affidavit in deciding whether H&H had shown that B&S was Kamstra's alter ego.

Finally, H&H says two other judges in this District applied *Serras* differently than this Court. Having examined the two opinions, the Court is not wholly convinced that is true. But even if it were true, district court opinions are merely persuasive precedent that this Court was not required to follow. *Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410, 428 (2011) ("[F]ederal district judges, sitting as sole adjudicators, lack authority to render precedential decisions binding other judges, even members of the same court."). So even if this Court applied *Serras* differently than other judges in this District, that is not a clear error warranting reconsideration. *Beck v. FCA US LLC*, No. 17-CV-10267, 2018 WL 3359100, at *2 (E.D. Mich. July 10, 2018) ("Beck cannot rely solely on nonbinding precedent and still establish that the Court committed a clear error in its decision.").

In sum, the Court did not misapply *Serras* and did not apply the wrong standard for deciding a Rule 12(b)(2) motion on the papers.

**B.**

H&H next claims that this Court erred by not giving due consideration to its assertion that B&S ordered Kamstra's shutdown. Citing *United Ins. Grp. Agency, Inc. v. Patterson*, No. 299631, 2011 WL 5067251 (Mich. Ct. App. Oct. 25, 2011), and *Anwar v. Dow Chem. Co.*, 876 F.3d 841 (6th Cir. 2017), the Court explained, "In this Court's view, that Kamstra turned to its corporate great-grandparent for help when trouble with Abbott was brewing does not show that B&S was Kamstra's alter ego. In fact, whether a subsidiary should continue to exist is the type of macromanagement that is expected of a corporate parent," *H&H*, 2020 WL 7338567, at *8. H&H does not dispute that generally, a parent's ability to shut down its subsidiary does not tend to show the two are alter egos. H&H instead argues that the situation is different when the parent shuts down its subsidiary so that the subsidiary can avoid its liabilities (or potential liabilities). (ECF No. 133, PageID.6491–6492.) In support of this argument, H&H cites a decision out of the Southern District of California, *Connecticut Gen. Life Ins. Co. v. Earl Scheib, Inc.*, No. 11CV788, 2012 WL 12868358 (S.D. Cal. May 22, 2012).

Given the posture—a motion for reconsideration—the Court is not inclined to engage this argument. A decision from the Southern District of California is merely persuasive precedent that cannot show this Court clearly erred. Further, H&H did not cite *Connecticut General* in the initial round of briefing, and a motion for reconsideration is not the place to present a new argument. *Dassault Systemes, SA v. Childress*, 828 F. App'x 229, 237 (6th Cir. 2020); *Laird v. United States*, No. 17-1430, 2017 WL 4770922, at *1 (6th Cir. Sept. 18, 2017).

But even engaging the argument, it is not persuasive.

H&H relies on the following language from *Connecticut General*: "Financial transactions between a parent and subsidiary do not make the parent liable for the subsidiary's debts, *unless*

*the parent attempts to liquidate the subsidiary for the purpose of avoiding its liabilities*." 2012 WL 12868358, at \*3 (emphasis added) (internal quotation marks omitted). In H&H's view, that is just what B&S did: soon after Abbott sued H&H and Kamstra (or was about to sue Kamstra), B&S directed Kamstra to sell its assets to Kafa and reassigned Kamstra's only two employees to Kafa.

As an initial matter, the facts of *Connecticut General* are materially different than the facts of this case. There, the same entity (essentially an individual) wholly owned both the parent and the subsidiary, the parent was the subsidiary's sole shareholder, and the parent and subsidiary had "many of the same, if not identical, directors and officers." 2012 WL 12868358, at \*1. Here, the same entity does not wholly own both B&S and Kamstra, B&S is not Kamstra's sole shareholder, and B&S and Kamstra do not have the same directors and officers. Indeed, in *Connecticut General*, the court found that there was a "unity of interest and ownership between" between the parent and subsidiary such that "no separation actually exists." *Id.* at \*3. As detailed in the prior opinion, B&S and Kamstra were separate in significant ways.

And even looking past factual differences, *Connecticut General*'s statement—"[the parent is liable if it] attempts to liquidate the subsidiary for the purpose of avoiding its liabilities"—has a questionable source. *Connecticut General* quoted *Wady* for that rule. *See* 2012 WL 12868358, at \*3. Yet *Wady* did not involve a parent liquidating a subsidiary to avoid the subsidiary's creditors. *Wady* in turn cited *Sonora Diamond Corp. v. Superior Ct.*, 83 Cal. App. 4th 523, 539 (2000). But *Sonora* did not involve a parent liquidating a subsidiary to avoid the subsidiary's creditors. So the language from *Connecticut General* upon which H&H relies is of questionable origin.

The Court has also examined all of the cases in H&H's reply brief that purportedly support its claim that it is proper to exercise personal jurisdiction over B&S because B&S directed

Kamstra's shutdown. Each of the cases are factually different from this one in material ways or the decisions lack persuasive reasoning for their ruling.

The Court also checked to see if any court applying Michigan law has pierced the corporate veil because the parent liquidated its subsidiary to avoid the subsidiary's liabilities. Of the Michigan authority that the Court reviewed, perhaps *Bodenhamer Bldg. Corp. v. Architectural Rsch. Corp.*, 873 F.2d 109 (6th Cir. 1989), most supports H&H position. There, the parent lent the subsidiary money, but under the terms of the loans, the parent could demand repayment at any time and was given a lien on all of the subsidiary's property. *Id.* After a $50,000 judgment was entered against the subsidiary, the parent used its rights under the loans and demanded repayment from the subsidiary. *Id.* This caused the subsidiary to auction all of its property. *Id.* At the auction, the parent bought the property at much less than it was worth. *Id.* The parent then leased the property to a new subsidiary, and the new subsidiary engaged in similar business to the old subsidiary. *Id.* The Sixth Circuit affirmed the district court's finding that the parent, old subsidiary, and new subsidiary had abused the corporate form and that it was proper to pierce their corporate veils. *Id.* at 111–12.

Despite some similarities, the facts of *Bodenhamer* are materially different than the facts of this case. There, a single individual was essentially the 100% owner of both the parent and the old subsidiary and "ran all of the business." 873 F.2d at 110, 112; *see also id.* at 112 (indicating identical officers). Here, B&S' CEO did not run Kamstra. There, when the old subsidiary was liquidated to avoid paying the judgment, the parent bought all of the old subsidiary's assets—and for much less than they were worth. *Id.* at 111, 113. Here, B&S did not buy any of Kamstra's assets; Kafa bought Kamstra's assets—and for book value.

The Court makes one last point about H&H's assertion that B&S' liquidation of Kamstra warrants exercising personal jurisdiction over B&S. Piercing is about equity. *See Green v. Ziegelman*, 873 N.W.2d 794, 803–04 (Mich. Ct. App. 2015) ("[A] court sitting in equity may look through the veil of corporate structure—that is, pierce the corporate veil—to avoid fraud or injustice."). So where a parent profits from its subsidiary while the subsidiary's creditors go unpaid, courts might pierce the corporate veil and require the profiting parent to pay the subsidiary's creditors. *See Servo Kinetics, Inc. v. Tokyo Precision Instruments Co.*, 475 F.3d 783, 799 (6th Cir. 2007). But as just explained, B&S did not receive the funds from Kamstra's asset sale. Instead, the money went back into Kamstra's bank account, ready for Kamstra to use to pay its creditors. True, had Kamstra stayed in business, perhaps it would have more money to pay its creditors. But the Court has cured that inequity by allowing H&H to proceed against Kamstra's successor, Kafa. In other words, this case does not involve a situation where the corporate parent (or, more precisely, corporate great-grand parent) received the money from liquidating its subsidiary when that money should have been used to pay the subsidiary's liabilities. The money from Kamsta's liquidation was and is available to H&H. So equity does not favor piercing B&S' corporate veil.

For all these reasons, the Court does not find that B&S' involvement in Kamstra's shutdown warrants altering the Court's prior decision.

## C.

Finally, H&H claims that this Court erred by not adequately considering an affidavit provided by Gerrit van Laar, B&S's CFO. The affidavit to which H&H refers was not submitted by any party in connection with B&S' Rule 12(b)(2) motion—it was filed in this case over a year earlier. (ECF No. 15-1.) In the affidavit, Van Laar states that he is "familiar with the operations of

Kamstra International B.V. in relation to H&H Wholesale Services" and "familiar with Kamstra's records of its regularly conducted activities." (ECF No. 15-1, PageID.165.) Van Laar's affidavit also reflects that he was familiar with Kamstra's sales of test strips to H&H and familiar with Kamstra's business in Michigan. (*See id.* at PageID.165–169.) Given that Van Laar is B&S' CFO, H&H argues that his self-admitted familiarity with Kamstra shows that B&S was much more involved in Kamstra's day-to-day operations than this Court appreciated. (*See* ECF No. 133, PageID.6494.) That involvement, says H&H, favors a finding that B&S and Kamstra are alter egos. (*See id.*)

Again, H&H fails to appreciate that this is "reconsideration, not initial consideration." *See Harley-Davidson Motor Co. v. Bank of New England-Old Colony*, N.A., 897 F.2d 611, 616 (1st Cir. 1990). In responding to B&S' motion to dismiss for lack of personal jurisdiction, H&H mentioned Van Laar's affidavit exactly once. (ECF No. 88, PageID.1756.) And the reference came in a bulleted list of seven or so facts allegedly showing that B&S and Kamstra were alter egos:

- B&S International employs Bert Meulman who decided to shutter Kamstra's operations;
- Gerrit/Gert van Laar, the chief financial officer of B&S International, submitted an affidavit in this lawsuit regarding Kamstra's dealings with H&H and specifically the FreeStyle sales (See ECF No. 15-1 and 16-1.)
- . . .

(ECF No. 88, PageID.1756–1757.) Nowhere did H&H explain that the statements within Van Laar's affidavit supported an alter ego finding—the bullet suggests that it was the filing of an affidavit by B&S' CFO in a case where Kamstra was a defendant that supported an alter-ego finding. It was not this Court's job to take a single bullet point in H&H's brief and develop an argument that (1) Van Laar was familiar with Kamstra's day-to-day operations and (2) B&S thus managed Kamstra's day-to-day activities. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way,

leaving the court to put flesh on its bones."). Accordingly, it was not clear error for this Court to omit a discussion of Van Laar's affidavit in addressing the alter-ego question.

* * *

In sum, whether under Rule 59(e), Rule 60(b)(1), or Local Rule 7.1(h), H&H has not shown that this Court committed a clear error that, if corrected, would warrant a different outcome. Accordingly, H&H's request for reconsideration will be denied.

## IV.

As an alternative to reconsideration, H&H asks this Court to enter a judgment under Rule 54(b) so that it can immediately appeal this Court's determination that H&H did not make a prima facie showing that B&S and Kamstra are alter egos.

Before a district court can certify a claim under Rule 54(b), it must "direct the entry of final judgment as to one or more but fewer than all the claims or parties in a case" and must "determine that there is no just reason to delay appellate review." *In re Fifth Third Early Access Cash Advance Litig.*, 925 F.3d 265, 273 (6th Cir. 2019). In deciding whether "there is no just reason to delay," courts consider a number of factors. These include, "(1) the relationship between the adjudicated and unadjudicated claims;" "(2) the possibility that the need for review might or might not be mooted by future developments in the district court;" "(3) the possibility that the reviewing court might be obliged to consider the same issue a second time;" "(4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final;" "(5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense and the like." *In re Fifth Third*, 925 F.3d at 275. Perhaps more simply stated, a district court is "to strike a balance between the undesirability of more than one appeal in a single action and the need for making review available in multiple-party

or multiple-claim situations at a time that best serves the needs of the litigants." 10 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2654 (4th ed.); *accord In re Fifth Third*, 925 F.3d at 275.

One factor arguably weighs against immediate appeal: there is some possibility that the Court of Appeals may have to address the alter-ego question twice. Right now, the question is whether H&H has made a prima facie showing; ultimately, though, the question would be whether H&H has made a showing by the preponderance of the evidence. That said, there is not a strong likelihood that the Court of Appeals will have to address the alter ego question twice. For one, it is possible that the Court of Appeals will affirm this Court's determination that H&H has not made a prima facie showing that B&S and Kamstra are alter egos. If so, B&S will be dismissed, and the question of its relationship with Kamstra will not come up again. Second, it is possible that discovery will answer the alter-ego question resoundingly in favor of one outcome or the other. If so, there will be no colorable basis for appealing the alter-ego issue again.

Two factors are something of a wash—the separateness of the issues and the possibility that the dispute over B&S will become moot. On the one hand, the primary dispute in this case is whether H&H's vendor agreement covered Kamstra's sales of glucose test strips to H&H. The facts and law underlying this issue are wholly distinct from the facts and law underlying the question of whether B&S and Kamstra are alter egos. *See In re Fifth Third*, 925 F.3d at 275 (providing that courts are to consider "the relationship between the adjudicated and unadjudicated claims"). On the other hand, if Kamstra is not required to indemnify H&H under the vendor agreement, there would be no need to decide whether Kamstra and B&S are alter egos. Under H&H's theory of the case, B&S is only on the hook if Kamstra is. To this end, B&S cites *Corrosioneering, Inc. v. Thyssen Environmental Systems, Inc.*, which states, "a 'separate and

distinct' issue of contribution or indemnification would likely be unsuitable for Rule 54(b) certification if the related issue of liability, on which the contribution or indemnity would depend, was yet to be resolved in the district court, because a finding on the liability issue in the district court could moot the need for review of the question of contribution or indemnification." 807 F.2d 1279, 1283 (6th Cir. 1986).

*Corrosioneering* does not require that this Court deny H&H's request for a judgment under Rule 54(b). Part of the district court's error in *Corrosioneering* was that it failed to address any of the Rule 54(b) factors other than the separate-and-distinct factor. Further, H&H has survived many efforts to have this case dismissed at the pleading stage and so it is plausible that it will prevail in the end. More importantly, in *Corrosioneering*, there was little indication that a decision by the Sixth Circuit on whether the defendant was entitled to be indemnified by a third party would significantly alter the course of the litigation. But that is just the case here. Whether B&S and Kamstra are alter egos appears to have significant ramifications for this case. If the vendor agreement covered Kamstra's sales of strips to H&H, then Kamstra may have to indemnify H&H for millions, perhaps tens-of-millions, in attorney's fees and damages. But Kamstra does not have millions (and certainly not tens-of-millions). (ECF No. 133, PageID.6498 ("Kamstra has already acknowledged that it does not have assets sufficient to satisfy a judgment in this case. . . .").) And, from what the Court can glean from the record, B&S is a larger company that could potentially indemnify H&H. So it is likely that the answer to the alter-ego question will significantly affect how much H&H can, as a practical matter, recover. In turn, the amount that H&H can recover likely affects how it will pursue this litigation. So the last Rule 54(b) factor, "economic and solvency considerations," *In re Fifth Third*, 925 F.3d at 275, strongly favors certification. Indeed, H&H's motion for reconsideration evidences how important B&S' presence is to H&H's suit.

On balance, the Court finds that "there is no just reason to delay appellate review." *Id.*; Fed. R. Civ. P. 54(b).

## V.

For the reasons given, H&H's motion for reconsideration is DENIED. The Court will enter a Rule 54(b) judgment separate from this order.

SO ORDERED.

Dated: May 4, 2021

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE